**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

<div style="border-top:1px solid"></div>

**I.    CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Marc Stolowitz</u>
Plaintiff                                                            Case # _____

                                                                     Judge _____

vs.

<u>Nuance Communications Inc.</u>
 Defendant

<div style="border-top:1px solid"></div>

**II.    AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

**III.    TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☒ Negligence—other
      ☐ Business governance
      ☒ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☐ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☐ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**      **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.**      **NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   <u>5</u>

**VI.**      **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.**      **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**      **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Stephen J Bagge</u>         Fla. Bar # <u>97788</u>
        Attorney or party              (Bar # if attorney)

<u>Stephen J Bagge     </u>        <u>12/03/2021</u>
  (type or print name)           Date

# IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | | |
|---|---|---|
| **MARC STOLOWITZ** | ) | |
| 1209 Retreat Hill Way | ) | |
| Asheville, North Carolina, | ) | |
| | ) | |
| **Plaintiff,** | ) | CASE NO. |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NUANCE COMMUNICATIONS, INC.,** | ) | |
| 1 Wayside Road | ) | |
| Burlington, Massachusetts, | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

This Complaint is based upon the malicious prosecution and fraudulent conduct of the Defendant, **Nuance Communications, Inc.** ("Nuance"), in providing false and fraudulent information to the Federal Bureau of Investigation ("FBI"), a federal law enforcement agency, and to the United States Attorney's Office ("USAO") for the Southern District of Florida, for the purpose of instituting a criminal prosecution against the Plaintiff, Marc Stolowitz. Nuance engaged in this conduct in order to retaliate against him for identifying and disclosing a cyber security breach in Nuance's computer systems, resulting in the public availability and disclosure of Protected Health Information of some 45,000 patients whose medical information were received, processed, and maintained by Nuance on behalf of the patients' health care providers. Such breach was a violation of the criminal and regulatory requirements of the Health Insurance Portability and Accountability Act. Nuance engaged in this conduct for the further reason of

concealing and covering-up Nuance's failings and liabilities with regard to its own security deficiencies for protecting patients' PHI, after having had notice of its security failing for over three years seeking instead to place blame on Mr. Stolowitz by falsely accusing him of criminal conduct.

Mr. Stolowitz seeks financial compensation for the injuries that he suffered by having to defend himself from the criminal allegations made against him by Nuance, which allegations resulted in a search warrant being obtained by the USAO and executed by the FBI, and the seizure of his personal computer devices and data; and other injuries.  He also seeks punitive damages.

## I. BACKGROUND

### A. Jurisdiction and Venue

1.      This Court has original jurisdiction over this Complaint because the Plaintiff, Marc Stolowitz, is seeking damages in an amount greater than thirty thousand dollars ($30,000), exclusive of interest, costs and attorneys' fees.

2.      This Court has personal jurisdiction over the Defendant, Nuance Communications, Inc., because the tortious acts and statutory violations complained of in this Complaint and the consequences of those acts occurred in the State of Florida; because Nuance Communications does business in the State of Florida; and because during the time period pertinent to this Complaint, Nuance Communications was a registered foreign profit corporation in the State of Florida.

3.      Venue is proper in this Court because the tortious acts occurred in Miami-Dade County, Florida.

**B. The Parties**

4.     Defendant Nuance Communications Inc. ("Defendant Nuance" or "Nuance") is a Delaware corporation doing business in Florida as a registered foreign profit corporation. Nuance is computer software technology company.

5.     Plaintiff Marc Stolowitz ("Mr. Stolowitz") is citizen of the United States and a resident of Ashville, North Carolina; during the times pertinent to this Complaint, he was a resident of Miami-Dade County, Florida.  He is former employee of Defendant Nuance.

6.     During the period 2008 through 2011, Mr. Stolowitz was employed as a software engineer by Webmedx, Inc. ("Webmedx"), a provider of medical transcription and editing services.  In July 2011, Nuance acquired Webmedx.  Thereafter, Mr. Stolowitz was employed by Nuance.

7.     During the period 2011 to 2016, Mr. Stolowitz was employed by Nuance as a Software Engineer; and, beginning in 2013, as a Senior Software Engineer.

**C. Definitions**

8.     At all times pertinent to this Complaint:

(a) The term "url" means "Uniform Resource Locator," and is frequently known as a web address.  It is a reference to a resource on the Internet, typically a web page, that specifies that page's location on a computer network and a mechanism for retrieving it.  A url for a particular webpage may be used by the public, and may be found by a member of the public by guessing, by a structured search, or by a random search.  Absent encryption or password protection on the webpage itself, a user who enters the url into his or browser intentionally or by guessing or randomly searching can access the information on the webpage.

(b) The term "server" means a computer that other computers can connect to via a network and which typically stores data, or processes application or user requests, or both.

## II. BACKGROUND: THE HIPPA RULES

9.      At all times pertinent to this Complaint, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") was in full force and effect.

10.     Pursuant to HIPAA, the U.S. Department of Health and Human Services ("HHS") issued regulations enforcing HIPAA, including the HIPAA Privacy Rule (the "Privacy Rule") and the HIPAA Notification Rule (the "Notification Rule").

11.     At all times pertinent to this Complaint, the Privacy Rule and the Notification Rule  applied to Webmedx and Nuance regarding the medical transcripts that they processed and maintained for medical providers and their patients.

### A. The HIPAA Privacy Rule

12.     As explained by HHS on its website:

The HIPAA Privacy Rule establishes national standards to protect individuals' medical records and other personal health information and applies to health plans, health care clearinghouses, and those health care providers that conduct certain health care transactions electronically.  The Rule requires appropriate safeguards to protect the privacy of personal health information, and sets limits and conditions on the uses and disclosures that may be made of such information without patient authorization. The Rule also gives rights to patients over their health information, including rights to examine and obtain a copy of their health records, and to request corrections.

The Privacy Rule is located at 45 CFR Part 160 and Subparts A and E of Part 1164.

13.     At all times pertinent to this Complaint, the Privacy Rule required Webmedx and Nuance to maintain the confidentiality of provider medical transcripts pertaining to patients, and

to ensure that they were not available to the public or otherwise available for disclosure by access through the Internet.

14.     At all times pertinent to this Complaint, information covered by the Privacy Rule was referred to as Protected Health Information, or "PHI"; and all medical transcripts processed or maintained by Webmedx and Nuance was PHI.

### B. The HIPAA Notification Rule

15.     As explained by HHS on its website

> The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information. Similar breach notification provisions implemented and enforced by the Federal Trade Commission (FTC), apply to vendors of personal health records and their third party service providers, pursuant to section 13407 of the HITECH Act.

## II. THE TORTIOUS CONDUCT OF DEFENDANT NUANCE

### A. The HIPAA Violations

16.     On or about September 25, 2014, Nuance realized that it was possible for a person using the Internet to enter a publicly available url, that is, a web address, into a web browser, and thereby access and download the transcription that was part of a patient's medical record and which contained PHI.

17.     On or about September 25, 2014, Holly Woemmel, then Nuance's Healthcare Incident Coordinator, authored a Privacy Incident Report (Exhibit 1).  In pertinent part, she wrote:

> Today, a URL was passed via email on the Nuance network internally from one person to another and when entered into Internet Explorer will show a patients report.  This would be fine if the system would first ask for a username/password, but was able to access the report without.  I have verified that this report can be viewed outside of the Nuance network which would mean if the appropriate

format of the URL is known, could be seen by anyone.  Also, if you increment the number of the URL, you can see other reports also.  Not sure if this may be a HIPPA violation, thus why I'm writing you about it.  I can provide further information, but will do that when requested.

18.     In response to the event described, a meeting was convened that afternoon including Ms. Woemmel and Nuance employees Marc Stolowitz, Megan Heffernan, Derek Etten, Al Dickard and Gretchen Herault.  Ms. Woemmel described the following as having been discussed among these individuals (redaction in original):

> Derek Ettan was working a ticket was opened [*sic*] from Fairfield Medical Center on a patient, XXX, XXXX.  The ticket was in regards to text markers were showing up.  In this ticket, that was passed from Nuance Support to Installations Support, there was a URL.  When Mr. Ettan clicked on the URL, and entered it into Internet Explorer, he was able to obtain the patients [*sic*] report.

19.     Among the conclusions resulting from the meeting was that no violation of the privacy requirements of HIPAA occurred as a result of the above described event (hereinafter, the "URL Event"), as the email containing the url of the subject patient had not left Nuance's internal network.

20.     Notwithstanding that the participants in the meeting had concluded that no violation of HIPAA requirements had occurred as a result of the URL Event, Nuance recognized that patient PHI maintained on its network was exposed to the public; and Nuance referred this problem as the "E5 URL Issue".

21.     During the period after September 24, 2014 until sometime before October 17, 2016, Nuance engaged in at least three efforts to resolve the E5 URL Issue by modifying the programming code for the data base on which patient PHI was maintained, and the code for accessing and using this data base.  Persons involved in these efforts included Marc Stolowitz, Al Dickard, Holly Woemmel, Latha Davala, Andy Chiquoine, Ernie Dipko, and John Schwartz.

22.     These efforts failed.  As a result of these efforts, it was determined that, to resolve the E5 URL Issue, the underlying programming code and data structures that supported the data base and the functionality of the data base would have to be redesigned and rewritten.

23.     Management made the decision to not engage in this redesign and rewrite.

24.     Management decided that, at some unspecified time in the future, it would replace the database with a new data base system, and that in the meantime patient PHI would remain at risk of exposure to public disclosure.

### C. Stolowitz Leaves Nuance

25.     On or about October 17, 2016, as part of a reduction in force, Nuance terminated Mr. Stolowitz from his employment.

26.     Pursuant to this termination, Mr. Stolowitz and Nuance entered into a Letter-Agreement (Exhibit 2), setting forth the terms and conditions whereby Mr. Stolowitz would leave the company, and the company would provide to Mr. Stolowitz Severance Benefits, including Severance Pay equivalent to twelve weeks of his base salary, in the amount of $18,751.15.

27.     This Letter-Agreement was executed on behalf of Nuance by Stephanie Franklin, Vice President of Human Resources.

### D. Stolowitz Watches Nuance's Ongoing HIPAA Violation

28.     After leaving Nuance, Mr. Stolowitz remained concerned whether Nuance had resolved the E5 URL Issue, doing so by either redesigning or replacing its data base and data base software.

29.     In or about November 2017, after having given Nuance amble time to resolve the E5 URL Issue, Mr. Stolowitz:

(a) used the Internet to visit the website of Nuance's database website that maintained patient information;

(b) by using publicly available urls, accessed patient PHI, comprised of information that should have been protected from public review and disclosure but which was not; and

(c) accessed this information.

30.     During the period November 27 to December 9, 2017, in preparation for notifying the U.S. Department of Health and Human Services about Nuance's malfeasance in failing to protect the PHI of the patients of its client providers, and showing HHS the extend of Nuance's malfeasance in terms of the volume of unprotected records, Mr. Stolowitz used publicly available urls to download the transcribed medical records of some 45,000 patients.

31.  At no time did Mr. Stolowitz further, publicly disclose these records, but maintained this information on a USB drive, and kept the USB drive secure in a locked storage unit, and again waited determine whether Nuance would resolve the E5 URL Issue.

32.     At all times pertinent to this Complaint, the PHI of patients maintained on Nuance's system was open to public access and downloading; and Nuance neither used nor implemented any protections such as passwords, encryption, or permission based access requirements to protect such PHI.

33     While downloading the PHI records, Mr. Stolowitz prepared spreadsheets (by automated means) to hand over to HHS for the purpose of identifying from exactly where within Nuance's system each patient each patient record had come.

34.     These spreadsheets contained four columns:

(a) *The first column*, captioned "Enterprise," listed the medical facility (that is, the medical provider) from which the medical record came;

(b) *The second column*, captioned "File," listed the file number assigned to the medical record;

(c) *The third column*, captioned "Path," identified the location on his storage media where Mr. Stolowitz stored the downloaded medical record; and

(d) *The fourth column*, captioned "URL," identified the publicly accessible URL or webpage address on Nuance's system where the medical record was located and from where it could be accessed and downloaded.

35.    Attached is sample portion of one of these spreadsheets (as Exhibit 3), this being for the medical facility and Nuance client Oak Bend Medical Center ("OBMC"), compressed and redacted so as to present only the identity of the medical provider, and the URL of the file location in Nuance's system where the medical record was maintained.

36.    Mr.  Stolowitz downloaded medical records made publicly available by Nuance of patients from five medical facilities in addition to OBMC, these five being: the Fairfield Medical Center ("FMC"); San Francisco Medical Hospital ("SFGH"); the Bon Secours St. Francis Health System ("BS-SFHS"); Downey Regional Medical Center (DRMC"); and Dignity Health–St. Francis Clinics ("CHW-SFC").

37.    In total, Nuance made publicly available the medical of patients from 137 medical facilities, all of which were Nuance's clients.  Attached as Exhibit 4 is a list of these facilities, including the six facilities identified above.

38.    At no time did Mr. Stolowitz intrude without permission on that portion of Nuance's system that maintained the PHI of the patients of its client providers, as Nuance made such information available to the public for access, review, and downloading.

39.     Other than to the USAO, the FBI, and HHS, at no time did Mr. Stolowitz disclose any medical records, including PHI, of patients of any medical providers that were clients of Nuance to any third party.

40.     As a result of Mr. Stolowitz's work arrangements with Nuance while he was employed by the company, Nuance was at all times pertinent to this Complaint aware of the Internet Protocol Address used by Mr. Stolowitz to access its network; the times when Mr. Stolowitz accessed its network; and the downloads that Mr. Stolowitz made from the network.

### E. Nuance Lies to the FBI and the SEC to Cover-Up Its Malfeasance

41.     Beginning at an unknown time after December 9, 2017, Nuance engaged in scheme to conceal and cover-up its failure to protect the PHI of the patients of its client providers and its outright violation of the HIPAA Privacy Rule, doing so by falsely, fraudulent, and maliciously accusing Mr. Stolowitz of engaging in unlawful and criminal conduct in accessing and downloading the medical transcription files of 45,000 of these patients.

1.      The FBI Search Warrant

42.     On unknown dates during the period of about mid-December 2017 through early January 2018, Nuance contacted the Federal Bureau of Investigation and the United States Attorney's Office and falsely, fraudulently, and maliciously accused Mr. Stolowitz of having engaged in "an unauthorized intrusion" of a Nuance system server, located in Pittsburgh, Pennsylvania, compromising approximately 45,000 individuals' personal health information from over 50 of Nuance's customers, in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; whereas in truth and fact, as Nuance then well knew, Nuance had *knowingly* and *willfully* allowed access to all such personal health information, and more, and there was no

"unauthorized" intrusion as no authorization was needed for any member of the public to access this information, and there was no such violation of the Computer Fraud and Abuse Act.

43.     In furtherance of these false, fraudulent, and fraudulent representations accusing Mr. Stolowitz of illegal conduct, Nuance notified the FBI that Mr. Stolowitz had previously worked for Nuance, and it provided the personnel file of Mr. Stolowitz to the FBI.

44.     As a direct and intentionally result of providing this false and fraudulent information to the FBI and the USAO, these agencies opened a criminal investigation, targeting Mr. Stolowitz for alleged violations of the Computer Fraud and Abuse Act, specifically "fraud and related activity with regard to computers); and "access device fraud," 18 U.S.C. § 1029.

45.     As a direct and intentionally result of providing this false and fraudulent information to the FBI and the USAO, these agencies sought and obtained a search from the United States District Court for the Southern District of Florida, authorizing the FBI to search the home of Mr. Stolowitz and to seize computer equipment and electronic storage media both owned by and in the personal possession of Mr. Stolowitz. (Exhibit 5.)

46.     On or about January 25,2018, the FBI executed this search warrant, obtained entry to Mr. Stolowitz's home; and seized his computer equipment and electronic storage media from his storage unit.

47.     After completing their investigation of Mr. Stolowitz, the USAO and the FBI filed no charges against Mr. Stolowitz, criminal or civil; and returned to him all of his computer equipment and storage media, including the PHI on the storage media.

2.     The Fraudulent SEC Filing

48.     On or about May 10, 2018, Nuance filed with the Securities and Exchange Commission (the "SEC") a Form 10-Q, a required quarterly report pursuant to Section 13 or

15(d) of the Securities and Exchange Act of 1934, for the quarterly period ended March 31,

2018.

49.     Both Mark Benjamin, then the Chief Executive Officer of Nuance, and Daniel D.

Tempesta, then the Executive Vice President and Chief Financial Officer of Nuance, signed the

certification for this Form 10-Q, as required by law, on behalf of Nuance, doing so on or about

May 10, 2018.

50.     This required certification  read:

I, [Mark Benjamin / Daniel D. Tempesta] certify, pursuant to 18 U.S.C. Section 1350, as
adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that the Quarterly
Report of Nuance Communications, Inc. on Form 10-Q for the period ended March 31,
2018 fully complies with the requirements of Section 13(a) or 15(d) of the Securities
Exchange Act of 1934 and that the information contained in such Quarterly Report on
Form 10-Q fairly presents in all material respects the financial condition and results of
operations of Nuance Communications, Inc.

51.     This certification was false and fraudulent, and made so knowingly, in an effort to

conceal and cover-up from the SEC, investors, clients, patients of its clients, and the public, the

fact that Nuance placed the PHI of millions of patients into an Internet domain that was

accessible to the public; and to cast blame for Nuance's own malfeasance on Mr. Stolowitz.

52.     This certification was false and fraudulent, in that the Form 10-Q included, on

page 27, the following paragraph (emphasis added):

In addition, in December 2017, an unauthorized third party *illegally accessed*
certain reports hosted on a Nuance transcription platform. This incident was
limited in scope to records of approximately 45,000 individuals and was isolated
to a single transcription platform that was promptly shutdown. Customers using
that platform were notified of the incident and were migrated to our eScription
transcription platforms. We also notified law enforcement authorities and have
cooperated in their investigation into the matter. . . . This incident did not have a
material effect on our financial results for the six months ended March 31, 2018
and is not expected to have a material effect on our financial results for future
periods. Future cybersecurity or data privacy incidents could have a material
adverse effect on our results of operations. See " Risk Factors - Cybersecurity and

data privacy incidents or breaches may damage client relations and inhibit our growth."

53.   Nuance made additional efforts to conceal and cover-up its malfeasance, including lying to hospitals and state public health agencies about whether Nuance was fulfilling its legal and contractual obligations to protect patient data.  As an example, the following article appeared in Data Breach Today, on online news service reporting on cybersecurity issues:

> Nuance Communications, which specializes in speech recognition software, says an unauthorized third party accessed one of its medical transcription platforms, exposing 45,000 individuals' records.
> * * * * *
> **Culprit: Former Nuance Employee**
> * * * * *
> But more details on the incident were revealed on Friday by the San Francisco Department of Public Health . . . . Nuance's transcription software was used for the department's hospitals and clinics within San Francisco's Health Network.
>
> "The investigation determined that a former Nuance employee breached Nuance's servers and accessed the personal information of thousands of individuals from several contracted clients." —San Francisco Department of Public Health
> * * * * *
> "We sincerely apologize for any inconvenience or concern that this situation may cause," Roland Pickens, director of the San Francisco Health Network, says in a statement. "*All of our vendors are required to attest to the protection of patient privacy, as part of their contract, and we continue to audit and improve upon that process.*"

*Nuance Communications Breach Affected 45,000 Patients*, Data Breach Today, May 14, 2018

(bold in original, italics added).

13

## COUNT I
### (Malicious Prosecution)

54.      The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 53 of this Complaint, and further alleges:

55.      An original criminal prosecution, comprised of (a) the aforesaid criminal investigation, (b) the issuance of the aforementioned search warrant, and (c) the execution of the aforementioned search warrant, was commenced against Mr. Stolowitz.

56.       The Defendant Nuance Communications, Inc. was the legal cause of this criminal prosecution against Mr. Stolowitz.

57.      Mr. Stolowitz was innocent of the charges maintained in the criminal prosecution.

58.      The criminal prosecution terminated with a bona fide resolution in favor of Mr. Stolowitz.

59.      At all times pertinent to this Complaint, the Defendant Nuance knew that no probable cause existed to initiate the criminal prosecution, as it knew that any intrusion into its publicly accessible computer system was and could be neither unauthorized nor illegal.

60.      At all times pertinent to this Complaint, the Defendant Nuance acted with malice, that is, it acted with the purpose of blaming Mr. Stolowitz for its own malfeasance in the failure to protect PHI of the patients of its clients; and to cover up and conceal its own malfeasance.

61.      At all times pertinent to this Complaint, the Defendant acted with further malice, as it acted with recklessness and wonton disregard of the truth regarding the public access of its computer systems and the authorization of Mr. Stolowitz or any member of the public to access these systems.

62.      Mr. Stolowitz suffered damages as a result of the Defendant Nuance's conduct, these being:

(a) approximately thirty thousand dollars ($30,000) in legal fees, expended for the purpose of defending himself from the criminal prosecution;

(b) the deprivation of his personal computer and related devices, and the software and data on these devices;

(c) approximately three hundred dollars for expenses in replacing his personal computer and related devices during the time period that that he was deprived of these;

(d) damage to his personal and professional reputation from being the object of the execution of the search warrant on his premises; and

(e) pain, suffering, and humiliation from being the object of a search warrant, including the observation by his neighbors of the execution of the search warrant on his premises.

63.     As a result of the aforesaid malicious prosecution, Defendant Nuance Communications, Inc. harmed the Plaintiff Marc Stolowitz.

## COUNT TWO
**(Defamation)**

64.     The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 53, and paragraphs 57 through 62 of this Complaint, and further alleges:

65.     The search warrant application, including the supporting affidavit disclosing Nuance's false and fraudulent statements and representations, and the admission that Nuance provided Mr. Stolowitz's personnel file as the personnel file of the alleged perpetrator of the "illegal" intrusion, was sealed when it was filed, and the information in these documents was unavailable to Mr. Stolowitz until these documents were unsealed.

66.     The search warrant was not unsealed and available for Mr. Stolowitz's examination until March 25, 2021; and for these reasons the information required by Mr. Stolowitz to bring this claim was concealed by Nuance, the FBI, and the USAO until that time.

67.     On unknown dates during the period of about mid-December 2017 through early January 2018, Defendant Nuance Communications, Inc. published to the FBI and the USAO (a) statements and representations that someone had had illegally intruded into, without authorization, their computer system and had so accessed PHI; and (b) supplied the FBI and the USAO the personnel file of Mr. Stolowitz as being the person who did it.

68.     At all times pertinent to this Complaint, these statements and representations were false in that, as Nuance then well knew, Nuance had *knowingly* and *willfully* allowed access to its computer system and to the PHI maintained on its computer system; and there was no "unauthorized" intrusion, as no authorization was needed for any member of the public to access this information.

69.     At all times pertinent to this Complaint, Nuance acted with negligently and with reckless disregard as to the truth of its statements and representations, as it had its possession the

knowledge and documents establishing that its computer systems containing the PHI were available for access by the public.

70.     The aforesaid statements and representations were per se defamatory, as they accused Mr. Stolowitz of a violation of federal *criminal* law, this being the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

71.     As a result of the aforesaid defamation, Defendant Nuance Communications, Inc. harmed the Plaintiff Marc Stolowitz.

## COUNT THREE
### (Fraud)

72.     The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 53, and paragraphs 55 through 62, and paragraphs 65 through 68 of this Complaint, and further alleges:

73.     At all times pertinent to this Complaint, Defendant Nuance Communications, Inc. engaged in a fraudulent scheme and conduct, all with the purpose of deceiving the FBI and the USAO into opening a criminal investigation and prosecution and identifying Mr. Stolowitz as the target and defendant or this investigation and prosecution.

74.     At all times pertinent to this Complaint, Defendant Nuance Communications, Inc. engaged in this fraudulent scheme and conduct with further the purpose of deceiving the United States District Court for the Southern District of Florida (the "Court"), for the purpose of influencing and convincing the Court to issue the search warrant, identifying Mr. Stolowitz as the target and defendant or this investigation and prosecution.

75.     The purpose of this fraudulent scheme and conduct by Nuance was to conceal and cover-up its own malfeasance from the SEC, investors, clients, patients of its clients, and the public as described above, and to provide to its support for its false statements and representations to the SEC in its May 2018 Form 10-K, seeking to absolve itself of its malfeasance in failing to resolve the E5 URL Issue, and its failure to report this issue to its clients, the patients of its clients, and the HHS as required by law.

76.     The false statements made by Defendant Nuance, that the intrusion was unauthorized and illegal, was material to the decision of the FBI and the USAO open a criminal investigation of Mr. Stolowitz; and to seek and execute the search warrant.

18

77.    The false statements made by Defendant Nuance, that the intrusion was unauthorized and illegal, was material to the decision of the Court to issue the search warrant.

78.    At all times pertinent to this Complaint, Mr. Stolowitz was the direct and intended victim of this fraudulent scheme and conduct.

79.     As a result of the aforesaid fraud perpetrated on the FBI, the USAO, and the Court, Defendant Nuance Communications, Inc. harmed the Plaintiff Marc Stolowitz.

## COUNT FOUR
### (Retaliation)

80.     The Plaintiff realleges and incorporates by reference the allegations contained in

paragraphs 1 through 53, paragraphs 55 through 62, paragraphs  65 through 70, and paragraphs

73 through 78 of this Complaint, and further alleges:

81.     Paragraph 16 of the Letter-Agreement provided in pertinent part:

**Protected Activity.**  You understand that nothing in this Agreement shall in any
way limit or prohibit you from engaging for a lawful purpose in any Protected
Activity. For purposes of this Agreement, "Protected Activity" shall mean filing a
charge, complaint, or report with or otherwise communicating with *or
participating in any investigation* or proceeding that may be conducted by, any
federal, state, or local government agency or commission . . . .  You understand
that in connection with such Protected Activity, you are permitted to disclose
documents or other information as permitted by law, and without giving notice to,
or receiving authorization from, the company.  You agree to take all reasonable
precautions to prevent any unauthorized use or disclosure of any information that
may constitute Company Proprietary Information under this Agreement or the
PIN to any partiers other than the relevant Government Agencies . . . .

(Emphasis added.)

82.     At all times pertinent to this Complaint, it was and remained within the scope of

the Protected Activity of Mr. Stolowitz's employment agreements with Defendant Nuance

Communications, Inc. that he could participate in any investigation of any appropriate

government agency, including HHS.

83.   Such scope of the Protected Activity of Mr. Stolowitz's employment agreements

with Defendant Nuance Communications, Inc. included initiating such an investigation by

collecting information from Nuance and disclosing that information to HHS.

84.     Mr. Stolowitz had brought to the attention of his then-employer, Nuance, the

existence of the violation of the HIPAA Privacy Rule, having done so in writing by (a) the

Privacy Incident Report authored by Holly Woemmel (Exhibit 1); and two subsequent email threads in late 2014. (Exhibits 6 and 7.)

85.     After leaving Nuance, he gave his employer more than one year to resolve the E5 URL Issue.

86.     When it became apparent that Nuance had not and was not going to resolve this issue, he commenced accessing and downloading documents to provide proof of the issue, and the scope of the issue, to HHS.

87.     On unknown dates during the period of about mid-December 2017 through early January 2018, Defendant Nuance took the aforesaid actions of malicious prosecution, defamation, and fraud, against Mr. Stolowitz in retaliation for his having threatened to disclose, and to disclose under oath when appropriate, the activity, policy and practice of Nuance that was in violation of the Privacy Rule and the Notification Rule, all in violation of § 448.102(1), Fla. Stat. (2009)

88.     As a result of the aforesaid retaliation against Mr. Stolowitz, Defendant Nuance Communications, Inc. harmed the Plaintiff Marc Stolowitz.

**COUNT FIVE**
**(Common Law Invasion of Privacy)**

89.     The Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 53, paragraphs 55 through 62, paragraphs 65 through 68, and paragraphs 73 through 78 of this Complaint, and further alleges:

90.     The Plaintiff has a common law right of privacy, which encompasses the right to be left alone.

91.     At all times relevant, Plaintiff had a reasonable expectation in the privacy of his home, his computer equipment, and his electronic storage media.

92.     As a direct and intentional result of Nuance providing false and fraudulent representations to the FBI, the FBI and USAO obtained a search warrant for Mr. Stolowitz's personal residence.

93.     Nuance Pursuant caused the issuance of the above referenced search warrant; caused the entry of the FBI entry into Mr. Stolowitz's residence; and caused the seizure by the FBI pursuant to the above referenced search warrant of his computer equipment and electronic storage media.

94.     The foregoing search was an intrusion into Plaintiff's physical solitude or seclusion as it consisted of a physical invasion of Plaintiff's home which was observed by Plaintiff's neighbors and publicized in the press.

95.     As a result of the aforesaid invasion of Plaintiff Marc Stolowitz's privacy, the Defendant Nuance Communications, Inc. knowingly and intentionally harmed Mr. Stolowitz.

## REQUEST FOR RELIEF

The Plaintiff, Marc Stolowitz, hereby demands and seeks that judgment be entered in his favor and against the Defendant Nuance Communications, Inc. as follows:

(1) Thirty thousand dollars ($30,000) in legal fees, incurred by Mr. Stolowitz to defend himself from the criminal prosecution;

(2) One thousand dollars ($1,000) for the deprivation and replacement of his personal computer and related devices, and the software and data on these devices;

 (3) One hundred thousand dollars ($100,000) in damages to his personal and professional reputation from being the object of the execution of the search warrant on his premises;

(4) One million dollars ($1,000,000) for pain, suffering, and humiliation resulting from his being the object of a search warrant, including the observation by his neighbors of the execution of the search warrant on his premises;

(5) Ten million dollars ($10,000,000) in punitive damages;

(6) Attorneys' fees for this action;

(7)  For such other and further relief to which Mr. Stolowitz may show himself justly entitled.

Mr. Marc Stolowitz hereby demands that this matter be tried before a jury.


By:  _/s/ Andrew Grosso_____
Andrew Grosso, Esq. (Fla. Bar No. 0998583)
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street NW, Suite 500
Washington, D.C.  20007
Telephone: (202) 298-6500
Email: Agrosso@acm.org

 /s/ Stephen J. Bagge
Stephen J. Bagge, Esq. (Fla. Bar No. 97788)
STEPHEN J. BAGGE, P.A.
3902 Henderson Blvd. STE 208-30
Tampa, Florida 33629
Telephone: (813) 250-0511
Facsimile: (813) 250-0511
Email: sbagge@baggelaw.com

Filing # 139724565 E-Filed 12/03/2021 11:45:43 PM

# EXHIBIT 1

**NUANCE** Privacy Incident Report

## Incident Details

| | |
|---|---|
| **Date/Time Incident Started:  9/25/2014 at 12:06 pm EST**<br>**Date/Time Incident Ended:** 9/25/2014 at 4:00 pm EST | **Date/Time Incident Reported: 9/25/2014 at 12:06 PM EST**<br>**Date/Time Incident Resolved:** Ongoing |
| **Facility/Location of Data** | Enterprise 5 – webmedx.com |
| **Systems/Services or Personal Safety Impacted:** | Protected Health Information. |
| **Initial Response Team (IRT) Members** | Holly Woemmel – Healthcare Incident Coordinator |

**Deleted: e**

## Incident Description

Today, a URL was passed via email on the Nuance network internally from one person to another and when entered into Internet Explorer will show a patients report.  This would be fine if the system would first ask for a username/password, but was able to access the report without.  I have verified that this report can be viewed outside of the Nuance network which would mean if the appropriate format of the URL is known, could be seen by anyone.  Also, if you increment the number of the URL, you can see other reports also.  Not sure if this may be a HIPPA violation, thus why I'm writing you about it.  I can provide further information, but will do that when requested.

## Incident Investigation

**Mitigation/Containment Steps:**
**Please see below under investigation – 9/25/2014**

**Investigation:**
9/25/2014 – 1:34 pm EST – Holly Woemmel, HC Incident Coordinator was passed an e-mail from Gretchen Herault, to follow up on what appeared to be a URL issue regarding Webmedx E5 transcription platform URL.  The following was the information that Al Dickard passed along to Arun Singh in the legal Department at 12:06 pm EST
"Today, a URL was passed via email on the Nuance network internally from one person to another and when entered into Internet Explorer will show a patients report.  This would be fine if the system would first ask for a username/password, but was able to access the report without.  I have verified that this report can be viewed outside of the Nuance network which would mean if the appropriate format of the URL is known, could be seen by anyone.  Also, if you increment the number of the URL, you can see other reports also. "

**Deleted: e**

9/25/2014 at 3:00 pm EST – A meeting was conducted with Marc Stolowitz, Megan Heffernan, Derek Etten, Al Dickard and Gretchen Herault.  Derek Ettan was working a ticket was opened from Fairfield Medical Center on a patient, XXX, XXXX.  The ticket was in regards to text markers were showing up.   In this ticket, that was passed from Nuance Support to Installations Support, there was a URL.  When Mr. Ettan clicked on the URL, and entered it into Internet Explorer, he was able to obtain the patients report.  Below is the URL:
XXXXXX

**Deleted: k**

Discussion surrounded the following:
1.  The ability to click on the link without entering a user name or password:
    a.   This URL was inside of the secure database – merge batch, where batches of PDF files can be distributed securely.
2.  The ability to copy the URL and paste into an Internet browser.
    a.   Confirmed that this URL was obtained and could only be obtained inside a secure database that a customer would not have access to.
    b.   These URLs are tracked in the database for routing.  Once the document has routed, then the URL is deleted.
    c.   The URL was very complex and would have not been easily guessable.
    d.   Ms. Heffernan confirmed that you cannot get to these URL's without logging into the

application first – www.webmedx.com.

3. Discussion around www.webmedx.com:
   a. The E5 sits on top of the browser
   b. URLS sit behind the application behind the scenes.
   c. The top URL does not change as you are searching in Webmedx.
   d. Customers usually only see the viewing.

**Deleted:** e

**Field Code Changed**

**Deleted:** e

**Field Code Changed**

**Deleted:**

## Root Cause Analysis

It was determined that the URL did not exist outside of the Nuance support services, therefore, a Privacy Event did not occur. Did discuss post mortem activities that need to be put in place in order to decrease the potential privacy risk that could occur if a URL were exposed to the Internet.

## Breach Discovery Analysis

1. Is the data "protected health information" ("PHI")? (See 45 C.F.R. 160.103). If the data is PHI, proceed to Question 2.
   **Yes - X**
   No

2. Is the data 'unsecured PHI"? PHI that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified in HHS guidance? Guidance published: 74 Federal Register, Pages 4270, 42742) Document review to determine if the PHI was "unsecured or secured".

   **It was determined that information was secure. The information was readable, but was accessed through secure database. The secured data did not go outside of Nuance Communications**

3. Determine and document whether the incident falls under one of the exceptions of the breach definition:

   a. Unintentional access to PHI in good faith in the course of performing one's job and such access does not result in further impermissible use or disclosure.
   b. Inadvertent disclosure of PHI by a person authorized to access PHI at a covered entity or business associate to another person authorized to access PHI at the same covered entity, business associate or affiliated organized health care arrangement (OHCA).
   c. When PHI is improperly disclosed but the covered entity or business associate believes in good faith that the recipient of the unauthorized information would not be able to retain the information.

If the disclosure falls into one of these exceptions, notification is not necessary. Document the exception determination.

## Post Mortem Activities

1. Currently, the PDF requests go directly to the page servers from Apache. Request the following occur:
   a. Route the PDF requests through E5, which will require the page server to go through WebLogic Server System Administration, which will allow an existing session to be checked.

| | |
|---|---|
| **Report Creation 9/29/2014** | **Authors: Holly Woemmel**<br>**Reviewers:  Approvers:** |

Filing # 139724565 E-Filed 12/03/2021 11:45:43 PM

# EXHIBIT 2



Nuance Communications, Inc.
One Wayside Road
Burlington, Massachusetts 01803
United States of America

nuance.com

October 17, 2016

Marc Stolowitz
900 6th St Apt 25
Miami Beach, FL 33139

Dear Marc:

As you have been informed, Nuance Communications, Inc. ("**Nuance**" or the "**Company**") is terminating your employment. This letter sets forth the terms of your separation. You are entitled to receive certain benefits regardless of executing a separation agreement (this "**Agreement**"), which the Company is herein offering to you to aid in your employment transition. However, if you do accept, execute and not revoke the Agreement, you will be entitled to receive additional benefits, all of which are outlined below.

1. **Separation.** Your last day of work with the Company shall be October 19, 2016 (the "**Separation Date**").

2. **Accrued Salary and Paid Time Off.** The Company has already or will pay you all accrued wages, and all accrued and unused Paid Time Off ("**PTO**") earned through the Separation Date, subject to standard payroll deductions and withholdings. You are entitled to these payments regardless of whether or not you sign this Agreement. The Company may deduct any PTO advance from your Severance Pay. By signing this Agreement, you are representing and warranting that you have received all accrued wages, and all accrued and unused PTO earned through the Separation Date, subject to standard payroll deductions and withholdings.

3. **Severance Pay.** The Company hereby offers to pay you severance pay consisting of a payment of 12 weeks of your base salary which equates to $18,751.15 ("**Severance Pay**"). In order to be eligible to receive this Severance Pay, you must execute and return this Agreement to: Nuance Communications, Inc., 3984 Pepsi Cola Drive, Melbourne FL, 32934, Fax 855-540-0083 or email HRCO@nuance.com Attn: Ann Tariq within the time period referenced in Section 19 and thereafter not revoke it within the time period referenced in Section 19. Severance Pay will be paid via direct deposit in a lump sum payment less applicable withholding amounts on the next applicable pay period following the expiration

of the seven (7) day revocation period referenced in Section 19 or as soon as reasonably practical thereafter. Dependent upon the pay rules in your state, your Severance Pay may be mailed via UPS to your home address that we have for you on record in payroll. In such cases, your Severance Pay will arrive several days after the pay date.

4. **Outplacement.** The Company hereby offers to provide you with a three (3) month membership in an outplacement program to assist you in your pursuit of a new job. In order to receive this benefit, you must execute and return this Agreement pursuant to Section 3 within the timeframe outlined in Section 19 and thereafter not revoke it within the time period referenced in Section 19.  You will receive additional information regarding the outplacement program under separate cover.

5. **Medical, Dental, Vision Insurance.** Where a worker suffers a voluntary or involuntary job loss, and has received health benefits through a group health plan provided by his/her employer, the federal Consolidated Omnibus Budget Reconciliation Act ("***COBRA***") or, if applicable, state insurance laws, provides these workers and their families, who would otherwise lose their health benefits, the right to continue to participate in the former employer's group health benefits for a limited period of time. The worker is responsible for paying the entire health care insurance premium, and the employer may charge the worker an additional 2% to cover the cost of administering the plan.

You are eligible for COBRA continuation coverage upon your Separation Date regardless of whether you accept the terms of the Agreement. You will receive information regarding COBRA and how to elect COBRA coverage under separate cover.

However, if you elect coverage and execute and return this agreement to the above referenced address in Section 3, within the time period referenced in Section 19 and thereafter not revoke it within the time period referenced in Section 19, the Company will pay for your health insurance continuation benefits provided under COBRA for a period of three (3) months from the Separation Date. Thereafter, you will be responsible for paying for continued COBRA coverage for you and your beneficiaries to the extent you and they remain eligible. You will receive correspondence from our COBRA provider explaining your rights, eligibility, and enrollment materials under COBRA.

6. **Equity and Company Bonus Program.** If you hold any Company unvested equity awards, i.e. stock options and/or restricted stock awards/units, vesting will cease on the Separation Date. Your eligibility for any equity as to any vested shares is as set forth in the Company's equity compensation plans ("**Plans**"). In addition, if you are participating in the Nuance Employee Stock Purchase Plan ("**ESPP**"), your plan-to-date contributions will be refunded to you in the Accrued Salary and Paid Time Off payment. In exchange for the Severance Pay and other consideration under this Agreement to which you would not otherwise be entitled, and in recognition of having completed the measurement period for the FY16 Company Bonus Program (the "**Program**"), you will continue to be eligible to participate in

the Program, in accordance terms of the Program, as if you had remained employed through the payout period.

7. **Other Compensation or Benefits.** You acknowledge that, except as expressly provided in this Agreement, you will not receive any additional compensation, severance or benefits after the Separation Date.

8. **Expense Reimbursements.** You agree that, within ten (10) days of the Separation Date, you will submit your final documented expense reimbursement statement reflecting all business expenses you incurred through the Separation Date, if any, for which you seek reimbursement. The Company will reimburse you for these expenses pursuant to its regular business practice.

9. **Return of Company Property.** Within ten (10) days of the Separation Date, you agree to return to the Company all Company documents (and all copies thereof) and other Company property which you have had in your possession at any time, including, but not limited to, files, notes, drawings, records, business plans and forecasts, financial information, specifications, computer-recorded information, tangible property (including, but not limited to, computers, Blackberries and cellphones), customer information, credit cards, entry cards, identification badges and keys; and, any materials of any kind which contain or embody any Company Proprietary Information (as defined below) and all reproductions thereof. In addition, you agree to return to the Company and then to destroy any Company documents that you may have in electronic form stored on any computing devices owned by you or over which you have control.

10. **Cooperation.** In exchange for the Severance Pay and other consideration under this Agreement to which you would not otherwise be entitled, you agree to cooperate with the Company in connection with any legal matters, if so requested by Nuance, including agreeing to make yourself available at Nuance's or Nuance's counsel's request, to assist with matters requiring the provision of information and/or testimony.

11. **Proprietary Information Obligations.** In exchange for the Severance Pay and other consideration under this Agreement to which you would not otherwise be entitled, you agree that, except for Protected Activity as defined in Section 16 below, you will hold in strictest confidence and will not use or disclose to any third party any Company Proprietary Information. "Company Proprietary Information" means confidential or otherwise protected information, knowledge or data of Company, including, but not limited to the terms of this Agreement, trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, works of authorship, know-how, improvements, discoveries, developments, designs and techniques, information regarding plans for research, development, new products, marketing and selling, business plans, budgets, salary information and unpublished financial statements, licenses, prices and costs, and unpublished information regarding suppliers and customers. Notwithstanding the

foregoing, Company Proprietary Information shall not include information which you can demonstrate (i) is generally known in the trade or industry other than by reason of a wrongful act or omission by you, (ii) was in your possession before you became an employee of the Company- as shown by physical documents or (iii) was acquired by you from a third party who has not thereby breached an obligation to the Company; provided, further however, that: (1) you may disclose the terms and existence of this Agreement to your immediate family; (2) either party may disclose the terms of this Agreement to its attorney, accountant, auditor, tax preparer, and financial advisors; as necessary to fulfill standard or legally required corporate reporting or disclosure requirements; and insofar as such disclosure may be necessary to enforce the terms of this Agreement or as otherwise required by law.

12. **Non-Solicitation.** In exchange for the Severance Pay and other consideration under this Agreement to which you would not otherwise be entitled, you agree that for a period of one (1) year after the Separation Date, you will not, without the express written consent of the Company, in its sole discretion, (a) solicit any business that is competitive with the Company's business from any client or customer of the Company or (b) either in your individual capacity or on behalf of or through any other entity, either directly or indirectly, hire, engage, recruit or participate in any way in the hiring, engagement or recruitment of, or participate in any effort to hire or solicit, any current or future employees of the Company or any subsidiary thereof.

13. **Non-Compete.** In exchange for the Severance Pay and other consideration under this Agreement to which you would not otherwise be entitled, you agree to and reaffirm your obligations under the *Nuance Communications, Inc. Employee Proprietary Information, Inventions, and Non-Competition Agreement ("**PIIN**")* which you previously executed, on October 15, 2011. However, that PIIN, contains restrictions on your competitive post-employment activities which prohibit you from competing with the Company for a period of one (1) year or twelve (12) months (the "***Restricted Period***").

In exchange for your accepting, executing and not revoking this Agreement, Nuance agrees to limit the Restricted Period for the non-compete clause in the Section 4 to 12 weeks after the Separation Date. In other words, Nuance agrees that the restrictions on your competitive post-employment activities as outlined in the PIIN, will only apply for the period of time for which you receive severance, as outlined in Section 3. Under no circumstances does this limitation on the Restricted Period apply to your Non-Solicitation or other obligations contained in the PIIN.

14. **Release.** Further, in exchange for the Severance Pay and other consideration under this Agreement to which you acknowledge you would not otherwise be entitled, and except as otherwise set forth in this Agreement or as prohibited by law, you hereby release, acquit and forever discharge the Company, its parents and subsidiaries, and its and their respective officers, directors, agents, servants, employees, attorneys, shareholders,

successors, assigns and affiliates, ("**Releasees**") of and from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind and nature, in law, equity, or otherwise, known and unknown, suspected and unsuspected, disclosed and undisclosed, arising out of or in any way related to agreements, events, acts or conduct at any time prior to and including the date you sign this Agreement, including but not limited to:   all such claims and demands directly or indirectly arising out of or in any way connected with your employment with the Company or the termination of that employment; claims or demands related to salary, bonuses, commissions, stock, stock options, or any other ownership interests in the Company, PTO pay, fringe benefits, expense reimbursements, severance pay, or any other form of compensation; claims pursuant to any federal, state or local statute including, but not limited to, the federal Civil Rights Act of 1964, as amended; the Federal Age Discrimination in Employment Act of 1967, as amended ("**ADEA**"); the Federal Americans with Disabilities Act of 1990, as amended; the Federal Family and Medical Leave Act of 1993; the Federal Sarbanes-Oxley Act of 2002; the Massachusetts Overtime Law, M.G.L. c. 151, §. 1A et seq.; the Massachusetts Payment of Wages Act, M.G.L. c. 149, § 148 et seq.; the Massachusetts Minimum Fair Wage Law, M.G.L. c. 151, § 1 et seq.; the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, § 1 et seq., and any other federal, state or local statute, rule, regulation or guideline similar to  those enumerated here; or claims related to any federal state or local common law cause of action, including, claims of tort violations, breach of contract, wrongful discharge, discrimination; harassment, fraud, defamation, emotional distress and breach of the implied covenant of good faith and fair dealing. This release shall include, without implication of limitation, express or implied, all Claims for wages, bonuses, commissions, overtime, vacation pay, severance pay, or any other form of compensation of any kind. This release does not release claims that arise after the execution date of this Agreement or claims that cannot be released as a matter of law.  However, the Equal Employment Opportunity Commission cannot be barred from investigating or pursuing a claim on your behalf.

15. **No Filings and Covenant Not to Sue**.  You represent that, as of the Agreement Date, you have not filed or caused to be filed any claims against any of the Releasees.  You further covenant not to sue any of the Releasees based on claims that are released in this Agreement.  A "covenant not to sue" is a legal term that means a person promises not to file a lawsuit or other legal proceeding.  It is different from the release of claims contained in Section 14 above.  In addition to waiving and releasing the claims described above, you promise never to file or prosecute any legal proceeding of any kind against any of the Releasees in any federal, state or municipal court, asserting any claims that are released by this Agreement.  You agree that you shall be liable for all expenses that the Company incurs in responding to any claims that you file or pursue in violation of this Section 15, including without limitation, the Company's reasonable attorneys' fees and costs.

16. **Protected Activity**.  You understand that nothing in this Agreement shall in any way limit or prohibit you from engaging for a lawful purpose in any Protected Activity. For purposes of

this Agreement, "Protected Activity" shall mean filing a charge, complaint, or report with, or otherwise communicating with, cooperating with or participating in any investigation or proceeding that may be conducted by, any federal, state or local government agency or commission, including the Securities and Exchange Commission, the Equal Employment Opportunity Commission, the Occupational Safety and Health Administration, and the National Labor Relations Board ("Government Agencies"). You understand that in connection with such Protected Activity, you are permitted to disclose documents or other information as permitted by law, and without giving notice to, or receiving authorization from, the Company. You agree to take all reasonable precautions to prevent any unauthorized use or disclosure of any information that may constitute Company Proprietary Information under this Agreement or the PIIN to any parties other than the relevant Government Agencies. You further understand that "Protected Activity" does not include the disclosure of any Company attorney-client privileged communications.

17. **Entire Agreement.** This Agreement, together with the PIIN which you previously executed and which may contain obligations that continue after the termination of your employment, constitutes the complete, final and exclusive embodiment of the entire agreement between you and the Company with regard to the subject matter hereof. It is entered into without reliance on any promise or representation, written or oral, other than those expressly contained herein, and it supersedes any other such promises, warranties or representations. This Agreement may not be modified or amended except in a writing signed by both you and a duly authorized officer of the Company. This Agreement shall bind the heirs, personal representatives, successors and assigns of both you and the Company, and inure to the benefit of both you and the Company, their heirs, successors and assigns. If any provision of this Agreement is determined to be invalid or unenforceable, in whole or in part, this determination will not affect any other provision of this Agreement and the provision in question shall be modified by the court so as to be rendered enforceable. This Agreement shall be deemed to have been entered into and shall be construed and enforced in accordance with the laws of the Commonwealth of Massachusetts as applied to contracts made and to be performed entirely within Massachusetts.

18. **409A.** The foregoing provisions are intended to comply with, or be exempt from, the requirements of Section 409A so that none of the severance payments and benefits to be provided hereunder will be subject to the additional tax imposed under Section 409A, and any ambiguities or ambiguous terms herein will be interpreted to so comply. Specifically, the payments hereunder are intended to be exempt from the requirements of Section 409A under the "short-term" deferral rule set forth in Section 1.409A-1(b)(4) of the Treasury Regulations. As a result, and notwithstanding anything to the contrary in this Agreement, if the deadline for signing and returning the severance agreement falls in the calendar year following the year in which your separation from service occurs, your separation payments and benefits (if any) will be paid in the later calendar year (but still within the time period described in this letter). In addition, for purposes of complying with Section 409A, any cash separation pay owed to you will, except as may be required by the following sentence, in all

cases be paid to you by the later of (a) the fifteenth (15th) day of the third (3rd) month following the close of the Company's fiscal year in which the separation pay is earned, or (b) March 15 following the calendar year in which the separation pay is earned. Also, if and to the extent necessary to avoid subjecting you to an additional tax under Section 409A on any such termination-related payments, payment of all or a portion of any termination-related benefits will be delayed until the first payroll date that occurs on or after the date that is 6 months and 1 day following your termination of employment. You and the Company agree to work together in good faith to consider amendments to this letter and to take such reasonable actions which are necessary, appropriate or desirable to avoid imposition of any additional tax or income recognition before actual payment to Executive under Section 409A. In no event will the Company reimburse you for any taxes or other costs that may be imposed on you as a result of Section 409A.

19. **Voluntary Execution of Agreement**. You understand and agree that you have executed this Agreement voluntarily, without any duress or undue influence on the part of or on behalf of the Company or any third party, with the full intent of releasing all claims against the Company and any of the other parties released herein. You acknowledge that you are knowingly and voluntarily waiving and releasing any rights you may have under the ADEA, as amended. You also acknowledge that the consideration given for this waiver and release is in addition to anything of value to which you were already entitled. You acknowledge that:

    a) you have read this Agreement;

    b) you have been advised that you should consult with an attorney and you have been represented in the preparation, negotiation, and execution of this Agreement by legal counsel of your own choice or have elected not to retain legal counsel;

    c) you understand the terms and consequences of this Agreement and of the releases it contains;

    d) you have forty-five (45) days to consider this Agreement (although you may choose to voluntarily execute this Agreement earlier);

    e) nothing in this Agreement prevents or precludes you from challenging or seeking a determination in good faith of the validity of this waiver under the ADEA, nor does it impose any condition precedent, penalties, or costs for doing so, unless specifically authorized by federal law;

    f) you have seven (7) days following the execution of this Agreement by the parties to revoke the Agreement; and this Agreement shall not be effective until the date upon which the revocation period has expired, which shall be the eighth day after this

Agreement is executed by you, provided that the Company has also executed this Agreement by that date; and

g)  you are fully aware of the legal and binding effect of this Agreement.

If this Agreement is acceptable to you, please sign below, and return the original to the address indicated in Section 3 within forty-five (45) days of the date hereof.

Sincerely,

Stephanie Franklin
Vice President Human Resources

Agreed:


_____          Date: _____

Marc Stolowitz

## Attachment A:  Disclosure of Information to Affected Employees

Nuance Communications, Inc. (the "**Company**") is conducting a reduction in force. Notices of expected terminations of employment are being distributed to affected employees between October 7, 2016 and October 17, 2016. This reduction in force is referred to below as the "Reduction in Force."

### Eligibility for Severance Benefits and General Release

The Company is offering each employee who will be laid off as part of the Reduction in Force the opportunity to receive certain severance pay and benefits ("**Severance Benefits**") in exchange for, among other terms, the affected employee's agreement to release any and all legal claims he or she may have against the Company.

All employees laid off as part of the Reduction in Force are initially eligible for Severance Benefits. Since you have been notified that you will be laid off as part of the Reduction in Force, you are initially eligible for Severance Benefits.

All employees under the age 40 who wish to receive Severance Benefits must sign the proposed separation agreement (the "**Agreement**") and return it to: 3984 Pepsi Cola Dr., Melbourne, FL 32934, Attn: Ann Tariq within twenty-one (21) days of receipt of the Agreement.

All employees age 40 or over who wish to receive Severance Benefits must sign Agreement and return it to: 3984 Pepsi Cola Dr., Melbourne, FL 32934, Attn: Ann Tariq within forty-five (45) days of receipt of the Agreement and this Attachment A. Once the Agreement has been signed, an employee age 40 or over may revoke the agreement within seven (7) days of signing.

The Agreement includes a provision under which employees agree to release any and all legal claims that they may have against the Company and related persons and entities.

Under the federal Age Discrimination in Employment Act ("**ADEA**"), employees age 40 or over who are offered Severance Benefits in exchange for releases of legal claims as part of a standard program are entitled to receive certain information related to the program. This Disclosure of Information (**Attachment A**) and the Agreement together provide that information to you.

### Factors Considered in Selection Decisions

Employees were selected for the Reduction in Force based on the Company's assessment of its business needs. The principal considerations that the Company used when selecting individuals were the criticality of the individual's role in light of the Company's predicted future business needs, assessment of individual skill set and job performance.

***Decisional Unit Information***

Under the ADEA, each affected employee over age 40 who is selected for layoff as part of the Reduction in Force and is initially eligible for Severance Benefits is entitled to certain information about other employees who are being offered Severance Benefits and those who are not. The information to be provided covers all employees in the "decisional unit" for the affected employee. A "decisional unit" is part of the Company's organizational structure from which it chose employees who would be laid off and would have the opportunity to receive Severance Benefits and those who would not. In your case, the decisional unit is Rob Titemore's Small/Mid-Market Platforms Senior Software Engineers.

Below is a spreadsheet which provides the job titles and ages of all employees within your decisional unit, based on the employees in the decisional unit as of September 12, 2016. The spreadsheet designates those who have been selected for layoff as part of the Reduction in Force and therefore are being notified of their layoff and those who have not been selected and therefore are not receiving a layoff notification. Ages are provided as of September 12, 2016. The job titles are the same job titles that are used by the Company for payroll and other official Human Resources purposes.

| Job Title | Age | Selected | Not Selected |
|---|---|---|---|
| Senior Software Engineer | 69 | 1 | 0 |
| Senior Software Engineer | 41 | 0 | 1 |
| Senior Software Engineer | 36 | 0 | 1 |
| Senior Software Engineer | 38 | 0 | 1 |
| Senior Software Engineer | 40 | 1 | 0 |
| Senior Software Engineer | 60 | 0 | 1 |
| Senior Software Engineer | 37 | 0 | 1 |
| Senior Software Engineer | 32 | 0 | 1 |
| Senior Software Engineer | 34 | 0 | 1 |
| Senior Software Engineer | 31 | 0 | 1 |

Filing # 139724565 E-Filed 12/03/2021 11:45:43 PM

# EXHIBIT 3

| Enterprise | URL |
| --- | --- |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50080000&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50030000&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50050000&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50040000&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50080001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020000&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50000000&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50070000&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50030001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50050001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50040001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50090001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020002&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50000001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020003&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50060001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50070001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50080003&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50010001&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020004&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50030003&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50050002&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50040002&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50000002&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50090002&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50080004&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50060002&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50060004&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50100003&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50100004&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50010002&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020006&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50040003&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50010003&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020007&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50090003&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020008&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50080005&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50080006&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50050004&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50060005&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50050005&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020009&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50030005&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020010&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50010004&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50040004&prompt1=1476103621277&returndocument=1&exportformat=rtf |
| OBMC | https://www.webmedx.com:443/cis/servlets/reports/pdf/OBMC/obmc_discharge_14.doc?prompt0=50020011&prompt1=1476103621277&returndocument=1&exportformat=rtf |

# EXHIBIT 4

Enterprise Listing

| No. | Code | Enterprise Description | Address | City | State |
|---|---|---|---|---|---|
| 2 | WPAHS | FORBES REGIONAL HOSPITAL | | PITTSBURGH | PA |
| 1 | CYB | CYBER HEALTHCARE GROUP | 1580 MAIN STREET | | |
| 3 | EPIC | ELECTRONIC PHYSICIAN'S INFO BUREAU | 9600 MONTCLAIR AVENUE | PITTSBURGH | PA |
| 20 | MIMA | HEALTH FIRST MEDICAL GROUP | | MELBOURNE | FL |
| 7 | BCMC | BEDFORD COUNTY MEDICAL CENTER | 845 UNION STREET | SHELBYVILLE | TN |
| 8 | WVUH | WEST VIRGINIA UNIVERSITY HOSPITALS | | | |
| 10 | OI | OHIO IMAGING | WESTERN RESERVE MEDICAL CENTER | | |
| 11 | IRAD | IRAD SERVICES INC. | | | |
| 12 | TIC | THE IMAGING CENTER | 5116 WEST GORE BOULEVARD | | |
| 13 | RPA | RADIOLOGICAL PHYSICIAN ASSOCIATES | 700 VILLAGE DRIVE | | |
| 16 | THC1 | WESTWOOD MRI LLC | 10921 WILSHIRE BLVD 2ND FLOOR LO | | |
| 19 | SCI | SUNCOAST IMAGING OF PORT ORANGE | 1680 DUNLAWTON AVENUE | | |
| 18 | ACH | ALIQUIPPA COMMUNITY HOSPITAL | 2500 HOSPITAL DRIVE | PITTSBURGH | PA |
| 21 | OMS | OPEN MRI OF SHEBOYGAN | 1414 NORTH TAYLOR | | |
| 22 | PME | PREMIER MEDICAL ENTERPRISE | | | |
| 23 | IMA | IMATECH SCHEDULING CENTER | 1031 EAST BATTLEFIELD | SPRINGFIELD | MO |
| 24 | ICMI | IMAGING CENTER MANAGEMENT SO ILLINOIS | | EDWARDSVILLE | IL |
| 25 | GH | GENERAL HEALTHCARE | | | |
| 26 | HVHS | HERITAGE VALLEY HEALTH SYSTEM | | | |
| 27 | KJ | KERLAN JOBE | | LOS ANGLES | CA |

| 28 | AG | AKRON GENERAL MEDICAL CENTER | 400 WABASH AVENUE | AKRON | OH |
| 29 | COH | CITY OF HOPE NATIONAL MEDICAL CENTER | | | |
| 30 | HCP | HEALTH CARE PARTNERS MEDICAL GROUP | 20406 EARL STREET | TORRANCE | CA |
| 31 | KP | KAISER PERMANENTE NORTHERN CALIFORNIA | 2025 MORSE AVENUE | SACRAMENTO | CA |
| 32 | TCRSC | TRI CITIES REGIONAL SURGERY CENTER | | | WA |
| 33 | LMH | LOURDES MEMORIAL HOSPITAL | 169 RIVERSIDE DRIVE | BINGHAMTON | NY |
| 34 | HEYWOOD | HEYWOOD HOSPITAL | 242 GREEN STREET | GARDNER | MA |
| 35 | UCSD | UNIVERSITY OF CALIFORNIA - SAN DIEGO | | | |
| 37 | TAN | TANANA VALLEY CLINIC | 1001 NOBLE STREET | FAIRBANKS | AK |
| 38 | GHC | GROUP HEALTH COOPERATIVE | | | |
| 39 | WSH | WEST SUBURBAN HOSPITAL | | | |
| 40 | TENET | WEST BOCA MEDICAL CENTER | | | |
| 41 | PM | PORTER MEMORIAL HOSPITAL | 814 LAPORTE AVENUE | VALPARAISO | IN |
| 42 | HPMC | HOLLYWOOD PRESBYTERIAN MEDICAL CENTER | | | |
| 43 | MMC | MEMORIAL MEDICAL CENTER | 2700 NAPOLEON AVE | NEW ORLEANS | LA |
| 44 | RWC | ROCKWOOD CLINIC | | | |
| 62 | AURORA | AURORA HEALTH SYSTEMS | | | |
| 63 | DM | DAMERON HOSPITAL ASSOCIATION | 525 WEST ACACIA STREET | STOCKTON | CA |
| 65 | SFBG | SISTERS OF ST. FRANCIS | | | IN |
| 66 | MAYO | MAYO CLINICS | | | |
| 67 | DRTJL | DR LOMIS/VALLEY BREAST | 15211 VANOWEN STREET | VAN NUYS | CA |
| 70 | BSHS | BON SECOURS HEALTH SYSTEMS | 5801 BREMO ROAD | RICHMOND | VA |
| 71 | INFINITE | INFINITE CONFERENCING | | | |

| 72 | CHW-EV | CHW EAST VALLEY | | | |
|---|---|---|---|---|---|
| 73 | VCALL | VCALL CONFERENCING | | | |
| 74 | SMAT | SAN MATEO MEDICAL CENTER | 222 WEST 39TH AVENUE | SAN MATEO | CA |
| 76 | SFC | ST. FRANCIS CLINICS | | | |
| 83 | SCOI | SOUTHERN CALIF. ORTHOPEDIC INSTITUTE | | | |
| 84 | MEDRAD | MEDRAD | | | |
| 88 | FH | FLORIDA HOSPITAL | | | |
| 91 | MHSET | MEMORIAL HEALTH SYSTEMS EAST TEXAS | | | |
| 92 | PHMA | PROVIDENCE HOSPITAL | 6801 AIRPORT BOULEVARD | MOBILE | AL |
| 94 | CITMH | CITRUS MEMORIAL HOSPITAL | | | |
| 95 | CITRUS | CITRUS MEMORIAL HOSPITAL | 502 W. HIGHLAND BLVD | INVERNESS | FL |
| 96 | GSRH | GOOD SHEPHERD REHABILITATION HOSPITAL | | | |
| 98 | ALVARADO | ALVARADO HOSPITAL | 6655 ALVARADO RD. | SAN DIEGO | CA |
| 99 | BS-PJ | BON SECOURS - PORT JERVIS | | | |
| 101 | BWC | BOICE-WILLIS CLINIC | | | |
| 106 | BS-GSH | BS-GOOD SAMARITAN HOSPITAL | | | |
| 107 | CHW-SRDH | CHW - ST. ROSE DOMINICAN HOSPITAL | | | |
| 109 | TJUH | THOMAS JEFFERSON UNIV. HOSPITAL | | | |
| 111 | MHS | METHODIST HEALTH SYSTEM | | | |
| 113 | VVMC | VAIL VALLEY MEDICAL CENTER | 181 WEST MEADOW DRIVE | VAIL | CO |
| 117 | CHW-SMR | CHW - ST. MARYS RENO | | | |
| 120 | TRAINING | TRAINING | | | |
| 121 | CHW-SFC | DIGNITY HEALTH-ST. FRANCIS CLINICS | | | |

3

| 45 | CNT | CENTINELA HOSPITAL MEDICAL CENTER | | | |
| 46 | DMCM | DOCTORS MEDICAL CENTER OF MODESTO | 1441 FLORIDA AVENUE | MODESTO | CA |
| 47 | CMC | COMMUNITY MEDICAL CENTERS | | | |
| 48 | GGMC | GARDEN GROVE HOSPITAL AND MEDICAL CENTER | 12601 GARDEN GROVE BOULEVARD | GARDEN GROVE | CA |
| 49 | DFM | DANIEL-FREEMAN HOSPITALS | | | |
| 50 | VPH | VALLEY PRESBYTERIAN HOSPITAL | 15107 VANOWEN ST. | VAN NUYS | CA |
| 51 | CHW-SMLB | CATHOLIC HEALTH WEST - ST. MARY LB | 1050 LINDEN AVE | LONG BEACH | CA |
| 52 | CHW-SGV | CATHOLIC HEALTH WEST - SAN GABRIEL | 438 W. LAS TUNAS DRIVE | SAN GABRIEL | CA |
| 53 | CMH | CLARK MEMORIAL HOSPITAL | 1220 MISSOURI AVE | JEFFERSONVILLE | IN |
| 54 | EH | ERNEST HEALTH | | | |
| 55 | DRMC | DOWNEY REGIONAL MEDICAL CENTER | | | |
| 56 | SM | ST. MARY'S MEDICAL CENTER | | WALLA WALLA | WA |
| 57 | AV | ST MARY APPLE VALLEY | 18300 HWY. 18 | APPLE VALLEY | CA |
| 58 | CHW-SJP | CATHOLIC HEALTH WEST-ST. JOSEPH PHOENIX | | | |
| 59 | CHW-SMSF | CATHOLIC HEALTH WEST- ST. MARY SAN FRAN | | | |
| 60 | CHW-SJS | CATHOLIC HEALTH WEST-ST. JOSEPH STOCKTON | | | |
| 61 | MMH | MERCY MEMORIAL HOSPITAL | 718 N MACOMB ST | MONROE | MI |
| 68 | PPMH | PHOEBE PUTNEY MEMORIAL HOSPITAL | P.O. BOX 1828 | ALBANY | GA |
| 69 | SJH | ST JAMES HEALTHCARE | 400 S CLARKE ST | BUTTE | MT |
| 78 | MRX | MRX HEALTH CONFERENCING | | | |
| 79 | LODI | LODI MEMORIAL HOSPITAL | 975 SOUTH FAIRMONT AVE | LODI | CA |
| 80 | PHS | PRESBYTERIAN HEALTHCARE SERVICES | 1100 CENTRAL AVE SE | ALBURQUERQUE | NM |
| 81 | SFGH | SAN FRANCISCO GENERAL HOSPITAL | | | |

| 82 | CHW-DHSC | CATHOLIC HEALTH WEST - DOMINICAN | 1555 SOQUEL DR | SANTA CRUZ | CA |
| 87 | SH | SWEDISH EDMONDS | | | |
| 89 | KGH | KENNEWICK PUBLIC HOSPITAL DISTRICT | | | |
| 93 | WELLSTAR | WELLSTAR | | | |
| 97 | CHW-NS | CHW NORTH STATE | | | |
| 100 | CCHS | CHRISTIANA CARE HEALTH SYSTEM | 501 W. 14TH STREET | WILMINGTON | DE |
| 102 | BS-BHS | BON SECOURS BALTIMORE HEALTH SYSTEM | | | |
| 103 | NMH | NANTICOKE MEMORIAL HOSPITAL | 801 MIDDLEFORD ROAD | SEAFORD | DE |
| 104 | BS-SACH | BON SECOURS ST. ANTHONY COMMUNITY HOSP | | | |
| 105 | BS-HRHS | BON SECOURS HAMPTON ROADS HEALTH SYSTEM | | | |
| 108 | OBMC | OAKBEND MEDICAL CENTER | 1705 JACKSON STREET | RICHMOND | TX |
| 112 | TCC | CORVALLIS CLINIC | 444 NW ELKS DRIVE | CORVALLIS | OR |
| 114 | SJHC | SAINT JOHN'S HEALTH CENTER | 1328 TWENTY-SECOND STREET | SANTA MONICA | CA |
| 115 | UKHC | UNIVERSITY OF KENTUCKY HEALTHCARE | | | |
| 116 | SJMC | ST. JOSEPH MEDICAL CENTER | 1401 ST. JOSEPH PARKWAY | HOUSTON | TX |
| 118 | MCI | MADISON CENTER | 403 E. MADISON STREET | SOUTH BEND | IN |
| 119 | BS-SFHS | BON SECOURS ST FRANCIS HEALTH SYSTEM | | | |
| 122 | ARC | AUSTIN REGIONAL CLINIC | 4515 SETON CENTER PARKWAY | AUSTIN | TX |
| 123 | HCMC | HENRY COUNTY MEDICAL CENTER | | | |
| 124 | FMC | FAIRFIELD MEDICAL CENTER | | | |
| 125 | MMCHS | MEADVILLE MEDICAL CENTER HOSPITAL SYSTEM | | | |
| 126 | CCMH | COSHOCTON COUNTY MEMORIAL HOSPITAL | 1460 ORANGE STREET | COSHOCTON | OH |
| 127 | SEM | SOUTHEASTERN MED | 1341 CLARK STREET | CAMBRIDGE | OH |

| 128 | TVH | THE VALLEY HOSPITAL | | | |
|-----|-----|---------------------|---|---|---|
| 129 | RMCM | REGIONAL ONE HEALTH | | | |
| 130 | MHBH | BAPTIST HOSPITALS OF SE TEXAS | | | |
| 131 | SSF-SAMC | SAINT ANTHONY MEDICAL CENTER | 1201 SOUTH MAIN STREET | CROWN POINT | IN |
| 132 | SSF-SAM | SAINT ANTHONY MEMORIAL | MICHIGAN CITY CAMPUS 301, WEST HOMER STREET | MICHIGAN | IN |
| 133 | SSF-SM | SAINT MARGARET MERCY | | | |
| 136 | FSEH | FRANCISCAN ST ELIZABETH HEALTH | | | |
| 139 | GCH | GARDEN CITY HOSPITAL | 6245 N. INKSTER RD | GARDEN CITY | MI |
| 144 | WCCH | HIGHLANDS MEDICAL CENTER | | | |
| 145 | SC | ST CATHERINE MEDICAL CENTER | | | |
| 156 | FA-CI | FA CENTRAL INDIANA | | | |
| 999 | Test | CITY OF HOPE NATIONAL MEDICAL-Test | | | |
| 143 | MD | MISSOURI DELTA | | | |
| 134 | CCFMG | CENTRAL CALIFORNIA FACULTY MEDICAL GROUP | 4910 CLINTON WAY | FRESNO | CA |
| 146 | AGH | ARTESIA GENERAL HOSPITAL | | | |
| 141 | WIPHD | WHIDBEY ISLAND PUBLIC HEALTH DISTRICT | | | |
| 147 | DMC | DELTA MEDICAL CENTER | 4000 GETWELL ROAD | MEMPHIS | TN |
| 135 | WHH | WESTERLY HOSPITAL HEALTHCARE | 25 WELLS STREET | WESTERLY | RI |
| 137 | UH | UNION HOSPITAL | | | |
| 138 | SBMC | SPRING BRANCH MEDICAL CENTER | 8850 LONG POINT ROAD | HOUSTON | TX |
| 140 | LHH | LAGUNA HONDA HOSPITAL | HOSPITAL AND REHAB CENTER 375 LAGUNA HONDA BLVD. | SAN FRANCISCO | CA |
| 142 | ACL | ALVERNO CLINICAL LABS | | | |

| 148 | FSJH | FRANCISCAN ST. JAMES HEALTH | | | |
|-----|------|------------------------------|--|--|--|
| 149 | FHC | FRANCISCAN HAMMOND CLINIC | | | |
| 155 | FA-AMB | FA AMBULATORY/CLINICS | | | |

Filing # 139724565 E-Filed 12/03/2021 11:45:43 PM

# EXHIBIT 5

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>900 6th Street, Apt 25<br>Miami Beach, FL 33139 | )<br>)<br>)<br>)<br>)<br>) |

Case No. 1:18mj 02090- Garber

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A."

located in the _____ Southern _____ District of _____ Florida _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B."

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1030 | Fraud and Related Activity With Respect to Computers |
| 18 U.S.C. § 1029 | Access Device Fraud |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

T.N. Pham, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-19-18

_____
*Judge's signature*

City and state:  Miami, Florida

Barry L. Garber, United States Magistrate Judge
*Printed name and title*

**SEALED AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, T. N. Pham, having been first duly sworn, do hereby depose and state as follows:

1.       I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since January 2006.  I am currently assigned to the Miami Division investigating cyber crime.  I have received training on the use of computers and digital media to conduct criminal activity and have been involved in investigations concerning computer related crimes and identity theft.  I have conducted and assisted in multiple computer related investigations, and have executed several search warrants.  Prior to joining the FBI, I was a mechanical engineer working in the aerospace and communication systems industry.

2.       This affidavit is made in support of an application for a warrant authorizing the search of a residence located at 900 6th Street, Apt 25, Miami Beach, Florida, 33139 (hereinafter, the "Target Premises"), as more particularly described in Attachment A of this affidavit/.

3.       Based on the information set forth in this affidavit, I submit there is probable cause to believe that the Target Premises contain the fruits, instrumentalities, and evidence of fraud and related activity in relation with computers, in violation of Title 18, United States Code, Section 1030 (fraud and related activity in connection with computers) and access device fraud, in violation of Title 18, United States Code, Section 1029 (access device fraud).  I am requesting authority to search the Target Premises, including any storage unit assigned to that dwelling, as further described in Attachment A, for the items specified in Attachment B, including any computers or electronic media, any electronic mobile devices and any electronic storage media stored therein, which items constitute fruits, instrumentalities, and evidence of the above violations.

4.       Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known concerning this investigation.  I have

included only those facts and circumstances that I believe are sufficient to establish probable cause for the issuance of the requested search warrant.

5.      The statements contained in this affidavit are based upon my investigation and information provided by other law enforcement officers and others, including personnel trained in the analysis of computers, servers, and other electronic devices.

### BACKGROUND OF THE INVESTIGATION

6.      Nuance Communication Inc. ("Nuance") is a computer software technology company.

7.      During the last week of November and first week of December 2017, a Nuance server suffered an unauthorized intrusion.   The intrusion occurred on a Nuance server in Pittsburgh, Pennsylvania that stored healthcare related data for Nuance's customers.  Nuance hired a company to conduct an investigation to determine the scope of the intrusion.

8.      The investigation revealed that the breach of the server targeted the personal health information of Nuance's customers.  In particular, investigation revealed that the breach resulted in the apparent compromise of approximately 45,000 individuals' personal health information from over 50 of Nuance's customers.

9.      Based on the investigation, the intrusion of the Nuance server occurred from the IP address of 216.189.190.225 (the "Target IP Address").   A subpoena to Atlantic Broadband revealed that this IP address was assigned to an account registered to Marc Stolowitz at the Target Premises. A check of the Florida driver's license database revealed that Marc Stolowitz listed the Target Premises as his address of record.

10.      Nuance provided information that Marc Stolowitz had previously worked for Nuance.  In Mr. Stolowitz's personnel file, Mr. Stolowitz indicates that he has familiarity with technical details related to Nuance's servers.

## USE OF PERSONAL IDENITY INFORMATION FOR FRAUD

11.     Based on my familiarity with other investigations, I am aware that personal identity information contained in health records (such as name, date of birth, and Social Security number) can be used for fraudulent purposes.  Such information can be used, for example, for the opening of credit cards (in violation of the access device fraud statute at 18 U.S.C. § 1029) or filing fraudulent tax returns, or other forms of identity theft fraud.  In addition, such information can be sold so that others can commit identity theft fraud.  Such identity theft fraud has been particularly prevalent in the South Florida area over the last several years.

## CONCLUSION

12.     Based upon the information provided above, your Affiant respectfully submits that

probable cause exists to believe that, at the Target Premises located at 900 6th Street, Apt 25,

Miami Beach, Florida, 33139, as more fully described in Attachment A, there have been violations

of Title 18, United States Code, Sections 1030 and 1029, and that the fruits, instrumentalities, and

evidence of those violations, as described in Attachment B of this affidavit, will be found at the

Target Premises.

Further Your Affiant Sayeth Naught.

_____
T. N. Pham, Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
this _19_ day of January, 2018.

_____
THE HONORABLE BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE

4

**ATTACHMENT A**
(Description of Property)

The Target Premises, including any and all computers, electronic mobile devices and electronic storage media found therein, is located at 900 6th Street, Apt 25, Miami Beach, Florida, 33139. Apartment 25 is an apartment located within 900 6th Street. The structure is a white, four story building with balconies on the second, third and fourth story. The structure is located on the south side of 6th Street, and the front entrance faces north, and is marked with "Academy Apartments Condominiums 900." Unit 25 is on the southeast corner of the top floor. The numerals 25 are affixed horizontally to the left of the door.





**ATTACHMENT B**
(Description of Items to be Searched and Seized)

Records and documentation[1] relating to 18 U.S.C. § 1030 (fraud and related activity in connection with computers) and 18 U.S.C. § 1029 (access device fraud) for the period from 2016 to the present, as set forth below for the respective items:

1.  Any and all records reflecting personal identity information (such as names, addresses, Social Security numbers, dates of birth, or phone numbers) or personal health information;

2.  Any and all records related to computer scripts or computer code involved in accessing servers, websites, or other information;

3.  Any and all records related to Nuance Communications, Inc. ("Nuance") or any of its customers or affiliates that maintained information with Nuance;

4.  Any and all data obtained from Nuance servers or access of other servers; and

5.  Any and all financial records for any entities or individuals relating to the premises to be searched.

**SEARCH AND SEIZURE OF COMPUTERS AND OTHER ELECTRONIC MEDIA**

6.  An FBI Computer Investigative Specialist (CIS) will be utilized for the search and seizure of any relevant evidence from any and all computers at the premises to be searched.

7.  Computer hardware, software, and electronic files may be vital to a criminal investigation in two distinct ways: (1) the objects themselves may be contraband, evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search for and seize computer hardware, software, and electronic files that are evidence of crime, contraband, instrumentalities of crime, and/or fruits of crime. Based upon my training, experience and information related to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes, memory chips and other digital storage media. I also know that

---

[1] The terms "records" and "documentation" include all of the following items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, or magnetic form (such as any information on an electronic or magnetic storage device, including computers, tablets, floppy disks, hard disks, ZIP disks, CD-ROMs, optical discs, backup tapes, printer buffers, smart cards, servers, memory calculators, pagers, flash drives, personal digital assistants such as Palm Pilot computers, as well as printouts or readouts from any magnetic storage device).

"hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.

d.  If the computer personnel determine that the computer equipment and storage devices are no longer necessary to retrieve and preserve the data, and the items are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(b), the government will return these items within a reasonable period of time not to exceed 60 days from the date of seizure.

9.  In order to search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize and search the following items, subject to the procedures set forth above:

a.  Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

b.  Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c.  Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, ZIP discs, back-up tapes, CD ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, pagers memory calculators, electronic dialers, electronic notebooks, and personal digital assistants (such as Palm Pilot computers);

d.  Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;

e.  Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f.  Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g.  Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 1:18mj 02090- Garber |
| 900 6th Street, Apt 25 Miami Beach, Florida 33139 | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Southern_____ District of _____Florida_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment "A."

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment "B."

**YOU ARE COMMANDED** to execute this warrant on or before *February 2, 2018* _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Miami Magistrate Judge *on dut*_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   *1-19-18 at 350 pm* _____

Judge's signature

City and state:     Miami, Florida _____          Barry L. Garber, United States Magistrate Judge
*Printed name and title*

*AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
(Description of Property)

The Target Premises, including any and all computers, electronic mobile devices and electronic storage media found therein, is located at 900 6th Street, Apt 25, Miami Beach, Florida, 33139. Apartment 25 is an apartment located within 900 6th Street. The structure is a white, four story building with balconies on the second, third and fourth story. The structure is located on the south side of 6th Street, and the front entrance faces north, and is marked with "Academy Apartments Condominiums 900." Unit 25 is on the southeast corner of the top floor. The numerals 25 are affixed horizontally to the left of the door.





during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. The volume of evidence—Computers and computer storage devices (i.e., hard disks, diskettes, tapes, laser disks) can store a voluminous amount of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are considered evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

b. The technical requirements—Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications. It is difficult to know before a search all that will be needed to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Because computer evidence is vulnerable to inadvertent or intentional modification or destruction (from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment may be necessary to complete an accurate analysis. Further, such searches often require the seizure of most or all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment.

8. In searching for data capable of being read, stored or interpreted by a computer, law enforcement personnel executing this search warrant will employ the following procedure:

a. The computer equipment and storage devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

b. Any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (a) an instrumentality of the offense, (b) a fruit of the criminal activity, (c) contraband, (d) otherwise unlawfully possessed, or (e) evidence of the offense specified above.

c. In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted,"

## ATTACHMENT A
(Description of Property)

The Target Premises, including any and all computers, electronic mobile devices and electronic storage media found therein, is located at 900 6th Street, Apt 25, Miami Beach, Florida, 33139. Apartment 25 is an apartment located within 900 6th Street. The structure is a white, four story building with balconies on the second, third and fourth story. The structure is located on the south side of 6th Street, and the front entrance faces north, and is marked with "Academy Apartments Condominiums 900." Unit 25 is on the southeast corner of the top floor. The numerals 25 are affixed horizontally to the left of the door.





**ATTACHMENT B**
(Description of Items to be Searched and Seized)

Records and documentation[1] relating to 18 U.S.C. § 1030 (fraud and related activity in connection with computers) and 18 U.S.C. § 1029 (access device fraud) for the period from 2016 to the present, as set forth below for the respective items:

1.  Any and all records reflecting personal identity information (such as names, addresses, Social Security numbers, dates of birth, or phone numbers) or personal health information;

2.  Any and all records related to computer scripts or computer code involved in accessing servers, websites, or other information;

3.  Any and all records related to Nuance Communications, Inc. ("Nuance") or any of its customers or affiliates that maintained information with Nuance;

4.  Any and all data obtained from Nuance servers or access of other servers; and

5.  Any and all financial records for any entities or individuals relating to the premises to be searched.

**SEARCH AND SEIZURE OF COMPUTERS AND OTHER ELECTRONIC MEDIA**

6.  An FBI Computer Investigative Specialist (CIS) will be utilized for the search and seizure of any relevant evidence from any and all computers at the premises to be searched.

7.  Computer hardware, software, and electronic files may be vital to a criminal investigation in two distinct ways: (1) the objects themselves may be contraband, evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data. Rule 41 of the Federal Rules of Criminal Procedure permits the government to search for and seize computer hardware, software, and electronic files that are evidence of crime, contraband, instrumentalities of crime, and/or fruits of crime. Based upon my training, experience and information related to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices including hard disk drives, floppy disks, compact disks, magnetic tapes, memory chips and other digital storage media. I also know that

---

[1]   The terms "records" and "documentation" include all of the following items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, or magnetic form (such as any information on an electronic or magnetic storage device, including computers, tablets, floppy disks, hard disks, ZIP disks, CD-ROMs, optical discs, backup tapes, printer buffers, smart cards, servers, memory calculators, pagers, flash drives, personal digital assistants such as Palm Pilot computers, as well as printouts or readouts from any magnetic storage device).

during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. The volume of evidence—Computers and computer storage devices (i.e., hard disks, diskettes, tapes, laser disks) can store a voluminous amount of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are considered evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

b. The technical requirements—Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications. It is difficult to know before a search all that will be needed to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Because computer evidence is vulnerable to inadvertent or intentional modification or destruction (from external sources or from destructive code imbedded in the system as a "booby trap"), a controlled environment may be necessary to complete an accurate analysis. Further, such searches often require the seizure of most or all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment.

8. In searching for data capable of being read, stored or interpreted by a computer, law enforcement personnel executing this search warrant will employ the following procedure:

a. The computer equipment and storage devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

b. Any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (a) an instrumentality of the offense, (b) a fruit of the criminal activity, (c) contraband, (d) otherwise unlawfully possessed, or (e) evidence of the offense specified above.

c. In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted,"

"hidden" or encrypted data to determine whether the data falls within the list of items to be seized as set forth herein.

   d.  If the computer personnel determine that the computer equipment and storage devices are no longer necessary to retrieve and preserve the data, and the items are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(b), the government will return these items within a reasonable period of time not to exceed 60 days from the date of seizure.

9.   In order to search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize and search the following items, subject to the procedures set forth above:

   a.  Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

   b.  Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

   c.  Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, ZIP discs, back-up tapes, CD ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, pagers memory calculators, electronic dialers, electronic notebooks, and personal digital assistants (such as Palm Pilot computers);

   d.  Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;

   e.  Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

   f.  Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

   g.  Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

# EXHIBIT 6

**From:** Stolowitz, Marc
**Sent:** Friday, December 05, 2014 1:34 PM
**To:** Woemmel, Holly; Davala, Latha; Chiquoine, Andy; Francis, David
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Donahue, Daniel; Dipko, Ernie; Schwartz, John
**Subject:** E5 URL issue ticket 44489

HI David,

Are we on for December 9th at 6 am to get the changes in that are described in ticket 44489 or do we need to decide on another date?

Thanks

Marc

---

**From:** Woemmel, Holly
**Sent:** Friday, November 21, 2014 2:50 PM
**To:** Stolowitz, Marc; Davala, Latha; Chiquoine, Andy
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie; Schwartz, John
**Subject:** RE: E5 Stag the Merge batch modulle needs to be setup for the URL issue

Thanks Marc, I did receive the ticket. I hope we can close the loop on this very soon

Holly Woemmel, MA, RHIA, CHPS

Senior Manager, Privacy and Compliance

Nuance Healthcare Infrastructure Services Group

Holly.Woemmel@nuance.com

3984 Pepsi Cola Dr.

Melbourne, FL 32934

1-888-411-3483, press # and say my name

Direct Dial - 321-752-3675

Cell Phone - 321-848-1015

NUANCE.COM

The experience speaks for itself ™

*The information in this e-mail is intended only for the person to whom it is addressed. It may contain information that is confidential and prohibited from disclosure. If you have received this message in error, please notify the original sender immediately by return e-mail and delete this message. If there is patient information, please contact the Compliance Department at 321-752-3675.*

---

**From:** Stolowitz, Marc
**Sent:** Friday, November 21, 2014 2:24 PM
**To:** Woemmel, Holly; Davala, Latha; Chiquoine, Andy
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie; Schwartz, John
**Subject:** RE: E5 Stag the Merge batch modulle needs to be setup for the URL issue

Hi Holly,

To give you a quick update.  I have created change request ticket 44489. I have included you as a CC on it.  We are just looking into scheduling the change to go into prod.

Thanks

Marc

---

**From:** Woemmel, Holly
**Sent:** Friday, November 07, 2014 2:28 PM
**To:** Stolowitz, Marc; Davala, Latha; Chiquoine, Andy
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie; Schwartz, John
**Subject:** RE: E5 Stag the Merge batch modulle needs to be setup for the URL issue

I appreciate you getting back with me Marc.  At least we are finally over one hurdle.  I look forward to hearing back from you.

**Holly Woemmel, MA, RHIA, CHPS**

Senior Manager, Privacy and Compliance

**Nuance Healthcare Infrastructure Services Group**

Holly.Woemmel@nuance.com

3984 Pepsi Cola Dr.

Melbourne, FL  32934

1-888-471-3463, press # and say my name

Direct Dial - 321-752-3675

Cell Phone - 321-848-1015

NUANCE.COM

The experience speaks for itself ™

*The information in this e-mail is intended only for the person to whom it is addressed. It may contain information that is confidential and prohibited from disclosure. If you have received this message in error, please notify the original sender immediately by return e-mail and delete this message. If there is patient information, please contact the Compliance Department at 321-752-3675.*

---

**From:** Stolowitz, Marc
**Sent:** Friday, November 07, 2014 2:26 PM
**To:** Woemmel, Holly; Davala, Latha; Chiquoine, Andy
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie; Schwartz, John
**Subject:** RE: E5 Stag the Merge batch modulle needs to be setup for the URL issue

Hi Holly,

Great News! Today we have completed our initial testing and the STAG setup looks fully functional.  We are now looking into how we are going to do our volume testing.  After we individually brainstorm we will have a meeting Monday to go over how to best get our volume testing done.  I will give you an update around Thursday or earlier on how that is going.

Thanks

Marc

---

**From:** Woemmel, Holly
**Sent:** Wednesday, November 05, 2014 11:39 AM
**To:** Davala, Latha; Stolowitz, Marc; Chiquoine, Andy
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie; Schwartz, John
**Subject:** RE: E5 Stag the Merge batch module needs to be setup for the URL issue

Great, thanks Latha.  I look forward to your update.

**Holly Woemmel, MA, RHIA, CHPS**

Senior Manager, Privacy and Compliance

**Nuance Healthcare Infrastructure Services Group**

**Holly.Woemmel@nuance.com**

3984 Pepsi Cola Dr.

Melbourne, FL 32934

1-888-471-3463, press # and say my name

Direct Dial - 321-752-3675

Cell Phone - 321-848-1015

NUANCE.COM

The experience speaks for itself ™

*The information in this e-mail is intended only for the person to whom it is addressed. It may contain information that is confidential and prohibited from disclosure. If you have received this message in error, please notify the original sender immediately by return e-mail and delete this message. If there is patient information, please contact the Compliance Department at 321-752-3675.*

---

**From:** Davala, Latha
**Sent:** Wednesday, November 05, 2014 11:33 AM
**To:** Woemmel, Holly; Stolowitz, Marc; Chiquoine, Andy
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie; Schwartz, John
**Subject:** RE: E5 Stag the Merge batch modulle needs to be setup for the URL issue

Good Morning Holly.

Yes, we are on tract, Derek started his testing as of Monday and DC fixed the Merged batch issue Yesterday.

During testing, Derek found an issue and Marc and I are going to work with him tomorrow on that since he is busy today.

We will send you an update after our testing tomorrow.

Thanks

Latha.

**From:** Woemmel, Holly
**Sent:** Wednesday, November 05, 2014 11:20 AM
**To:** Davala, Latha; Stolowitz, Marc; Chiquoine, Andy; Woemmel, Holly
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie; Schwartz, John
**Subject:** RE: E5 Stag the Merge batch module needs to be setup for the URL issue

Everyone, Derek was supposed to be back in the office this week to do the interface testing?  Where are we at with this project at this point?  If I need to call a meeting to get this back on track, I will.

Latha, you were keeping this project on track, can you please update me?

Thanks

**Holly Woemmel, MA, RHIA, CHPS**

Senior Manager, Privacy and Compliance

Nuance Healthcare Infrastructure Services Group

Holly.Woemmel@nuance.com

3984 Pepsi Cola Dr.

Melbourne, FL  32934

1-888-471-3463, press # and say my name

Direct Dial - 321-752-3675

Cell Phone - 321-848-1015

NUANCE.COM

The experience speaks for itself ™

*The information in this e-mail is intended only for the person to whom it is addressed. It may contain information that is confidential and prohibited from disclosure. If you have received this message in error, please notify the original sender immediately by return e-mail and delete this message. If there is patient information, please contact the Compliance Department at 321-752-3675.*

**From:** Davala, Latha
**Sent:** Monday, October 27, 2014 10:56 AM
**To:** Woemmel, Holly; Stolowitz, Marc; Chiquoine, Andy
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie; Schwartz, John
**Subject:** RE: E5 Stag the Merge batch module needs to be setup for the URL issue

Hi Holly,

I didn't realize that we didn't update you since October 14th.  STAG has been updated with the fix couple of weeks back but during our testing, we found that merged batch feature is not working and also found that we are filling up the disk space since we enabled excess logging, which we need for our testing.  To continue our testing, we need these two issues fixed before we proceed further.

As of last Thursday log files issue was resolved but still waiting for the second one.  As per Marc's email on Oct 21st, he explained David Francis (from DC) how the module works and he is going to take care of the Issue.

We must test the Merged batch feature before we move the fix to PROD since few of our customers are using this feature in PROD.

Also, I just received an email from Mark Heimbach (Derek's Manager) and he said Derek will be the only one who can help me with Interface testing

in E5TEG (sending dictations, ADT, HL7 (In and Out bound) etc.). In the meanwhile, I will see what else I can do.

Thanks

Latha.

---

**From:** Woemmel, Holly
**Sent:** Monday, October 27, 2014 10:32 AM
**To:** Davala, Latha; Stolowitz, Marc; Chiquoine, Andy
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie; Schwartz, John; Woemmel, Holly
**Subject:** RE: E5 Stag the Merge batch module needs to be setup for the URL issue

Latha, let me know if about item#1.  For Item#2, since I was left off the e-mails staring on 10/14 – is there more to add to this string to ensure I understand the who, what, where, when and why on this particular issue?

**Holly Woemmel, MA, RHIA, CHPS**

Senior Manager, Privacy and Compliance

Nuance Healthcare Infrastructure Services Group

**Holly.Woemmel@nuance.com**

3984 Pepsi Cola Dr.

Melbourne, FL  32934

1-888-471-3463, press # and say my name

Direct Dial - 321-752-3675

Cell Phone - 321-848-1015

NUANCE.COM

The experience speaks for itself ™

*The information in this e-mail is intended only for the person to whom it is addressed. It may contain information that is confidential and prohibited from disclosure. If you have received this message in error, please notify the original sender immediately by return e-mail and delete this message. If there is patient information, please contact the Compliance Department at 321-752-3675.*

---

**From:** Davala, Latha
**Sent:** Monday, October 27, 2014 10:28 AM
**To:** Woemmel, Holly; Stolowitz, Marc; Chiquoine, Andy
**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie
**Subject:** RE: E5 Stag the Merge batch module needs to be setup for the URL issue

Good Morning Holly.

Until last week, we are waiting for two things to be fixed before we can start our testing in STAG.

1.    Purge script to delete log files periodically so that the size of the log files won't take all disk space (which can bring the system down).  DC completed this task on Thursday but Derek Etten (who will be testing the interface part of the fix) is gone for vacation and won't be back until Nov 3rd. I am going to reach his manager and see if anybody else can help me with the testing and If not, we have to wait until he is back.

2.    Report Processor Module issue.  I updated the ticket asking for an update.  I will let know once this is done.  I can test this piece without anybody's help once fixed.

Thanks

Latha Davala.



**From:** Woemmel, Holly

**Sent:** Monday, October 27, 2014 10:12 AM

**To:** Stolowitz, Marc; Chiquoine, Andy; Davala, Latha

**Cc:** Bower, Ralph; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel; Dipko, Ernie

**Subject:** RE: E5 Stag the Merge batch module needs to be setup for the URL issue

**Importance:** High

Latha, you were to keep me updated in Marc's absence regarding the E5 URL issue.  I wold like an update and documentation on what has happened since 10/14/2014 and if this issue has been resolved.

Thanks in advance

**Holly Woemmel, MA, RHIA, CHPS**

Senior Manager, Privacy and Compliance

**Nuance Healthcare Infrastructure Services Group**

**Holly.Woemmel@nuance.com**

5984 Pepsi Cola Dr.

Melbourne, FL  32894

1-888-471-3463, press # and say my name

Direct Dial - 321-752-3675

Cell Phone - 321-848-1015

**NUANCE.COM**

**The experience speaks for itself ™**

*The information in this e-mail is intended only for the person to whom it is addressed. It may contain information that is confidential and prohibited from disclosure. If you have received this message in error, please notify the original sender immediately by return e-mail and delete this message. If there is patient information, please contact the Compliance Department at 321-752-3675.*

**From:** Stolowitz, Marc

**Sent:** Saturday, October 11, 2014 11:21 AM

**To:** Chiquoine, Andy

**Cc:** Bower, Ralph; Woemmel, Holly; Davala, Latha; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel

**Subject:** RE: E5 Stag the Merge batch module needs to be setup for the URL issue

HI Andy,

Did Dan give you any map or document going over the E5 STAG environment?  I am happy to look into that document to see if I can find the reports processor.  This would had been made in the last year since we just moved to a new STAG environment.

Thanks

Marc

**From:** Chiquoine, Andy

**Sent:** Friday, October 10, 2014 9:24 AM

**To:** Stolowitz, Marc

**Cc:** Bower, Ralph; Woemmel, Holly; Davala, Latha; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel

**Subject:** Re: E5 Stag the Merge batch module needs to be setup for the URL issue

Do we know the file name of this module and how it runs? Does it run as a service or is it scheduled with a cron or through the web logic app server?

Sent from my iPhone

On Oct 10, 2014, at 9:12 AM, "Stolowitz, Marc" <Marc.Stolowitz@nuance.com> wrote:

I think prodbatch01 is just for PROD.  We are looking for the equivalent in STAG.

---

**From:** Chiquoine, Andy
**Sent:** Friday, October 10, 2014 8:58 AM
**To:** Stolowitz, Marc; Bower, Ralph
**Cc:** Woemmel, Holly; Davala, Latha; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel
**Subject:** Re: E5 Stag the Merge batch modulle needs to be setup for the URL issue

What is a module?

---

**From:** <Stolowitz>, Marc <Marc.Stolowitz@nuance.com>
**Date:** Friday, October 10, 2014 8:53 AM
**To:** Andy Chiquoine <andy.chiquoine@nuance.com>, "Bower, Ralph" <Ralph.Bower@nuance.com>
**Cc:** "Woemmel, Holly" <Holly.Woemmel@nuance.com>, "Davala, Latha" <Srilatha.Davala@nuance.com>, "Etten, Derek" <Derek.Etten@nuance.com>, "Dickard, Al" <al.dickard@nuance.com>, David Francis <david.francis@nuance.com>, Daniel Donahue <daniel.donahue@nuance.com>
**Subject:** RE: E5 Stag the Merge batch modulle needs to be setup for the URL issue

HI Andy,

Merge batch is a module that takes a bunch of documents from an enterprise and "bundles" them into a single document.  From an email that Ernie sent it might be in prodbatch01.  You might want to start there.

Thanks

Marc

---

**From:** Chiquoine, Andy
**Sent:** Thursday, October 09, 2014 6:33 PM
**To:** Stolowitz, Marc; Bower, Ralph
**Cc:** Woemmel, Holly; Davala, Latha; Etten, Derek; Dickard, Al; Francis, David; Donahue, Daniel
**Subject:** RE: E5 Stag the Merge batch modulle needs to be setup for the URL issue

Mark,

I'm sorry, unfortunately I'm on the same page as Dave Francis on this one. I'm not really sure where to start. Can you provide any background on what the merge batch module is, or where it would be configured? I did find reference to two servers Pordbatch01 and Prodbatch02, but base on my documentation those are used for the production environment. I'm including Ralph on this thread in case he knows anything about this, but any additional information you can provide will definitely be a help.

Thanks,

Andy

---

**From:** Stolowitz, Marc
**Sent:** Thursday, October 09, 2014 5:19 PM
**To:** Chiquoine, Andy
**Cc:** Woemmel, Holly; Davala, Latha; Etten, Derek; Dickard, Al
**Subject:** E5 Stag the Merge batch modulle needs to be setup for the URL issue

Hi Andy,

We have made some good progress today with the URL issue, but I had to put ticket 41180 in that goes over a problem we are seeing when

we try to email merge batches   It appears that email on the machine that runs merge batch is not working.  Do you have a resource we can use to help figure out this issue?

Thanks

Marc

Marc Stolowitz

Senior Software Engineer

Nuance Healthcare

Nuance Communications, Inc.

305.677.3326 Office

NUANCE.COM

The experience speaks for itself ™

Keep up to date with Nuance Healthcare:

<image001.png><image002.png><image003.png><image004.png><image005.png>

*Confidentiality Notice:  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.*

↩ Reply     ➡ Forward

# EXHIBIT 7

**Fw: FW: RT 44489 E5 URL security issue change request for Prod**



**From:** Bower, Ralph
**Sent:** Thursday, December 18, 2014 3:51 PM
**To:** Davala, Latha; Dipko, Ernie; Stolowitz, Marc
**Subject:** RT 44489 E5 URL security issue change request for Prod

Please review this change procedure, make sure it is correct and let me know if I need to make any changes.

1. Take the e5 applications offline

2. Create a new E5 application user from the application who can access all facilities but doesn't have any access to any modules.

3. Modify existing DB script to add the user credentials of the user created in Step1 to the url stored in "routing_queue.url" field.

      a.Backup the current trigger ROUTING_QUEUE_INSERT_CLEANUP

      b.Replace the current trigger ROUTING_QUEUE_INSERT_CLEANUP with the attached ROUTING_QUEUE_INSERT_CLEANUP.txt
script

4. Update the current trigger ROUTING_QUEUE_PROC_DATE_FIX

      a.Backup the current trigger ROUTING_QUEUE_PROC_DATE_FIX

      b.Replace the current trigger ROUTING_QUEUE_PROC_DATE_FIX

5. (servers)

Process Overview:

- Shutdown the apache webservers

- Perform changes to Application tier including restarts

- Put new apache configuration in place

- Restart apache webservers

Webservers:

- Comment out all of the following in:  /opt/apache2/conf/extra/httpd-ssl.conf

<IfModule proxy_balancer_module>

    <Proxy balancer://pdfbalancer>

      BalancerMember http://10.2.14.1

      BalancerMember http://10.2.14.2

      BalancerMember http://10.2.1.27

      BalancerMember http://10.2.1.28

      BalancerMember http://10.2.1.29

Show quoted text

</IfModule>

And also:

ProxyPass /cis/servlets/reports/pdf/ balancer://pdfbalancer/Interfaces/ISAPIPageServer.dll/

- Apache shutdown and startup
  o /opt/apache2/bin/apachectl stop
  o /opt/apache2/bin/apachectl start

Application Servers:

- On the weblogic console (prodwlc01) change file: /deployments/v5.8.3.0/cis/WEB-INF/web.xml  - change authenticate from false to true

```
<servlet>
    <servlet-name>webmedx.servlet.PDFReportServlet</servlet-name>
    <servlet-class>webmedx.servlet.PDFReportServlet</servlet-class>
    <init-param>
        <param-name>authenticate</param-name>
        <param-value>false</param-value>
    </init-param>
    <init-param>
        <param-name>loadbalancername</param-name>
        <param-value>WORD</param-value>
    </init-param>
    <init-param>
        <param-name>configurationreadername</param-name>
        <param-value>webmedx.comm.loadbalance.WordConfigurationReader</param-value>
    </init-param>
    <init-param>
        <param-name>loggingresponsetimereader</param-name>
        <param-value>webmedx.util.logging.WordResponseTimeConfigurationReader</param-value>
    </init-param>
    <init-param>
        <param-name>wl-dispatch-policy</param-name>
        <param-value>PDFReportServletQueue</param-value>
    </init-param>
    <load-on-startup>1</load-on-startup>
</servlet>
```

6. Then issue the following command

/u01/wls/user_projects/domains/EnterpriseDomain/redeployJSP.sh cis/WEB-INF/web.xml

• From the Weblogic Console GUI, restart all application servers


Thank you,

**Ralph Bower**
Senior Database Administrator
**NUANCE COMMUNICATIONS, INC.**
Nuance Healthcare

412-706-1458 – Office
412-651-2813 – Home
NUANCE.COM
The experience speaks for itself ™

**This message, together with any attachments, is intended only for the use of the individual or entity to which it is addressed.  It may contain information that is confidential and prohibited from disclosure.  If you are not the intended recipient, you are hereby notified that any dissemination or copying of this message or any attachment is strictly prohibited.  If you have received this message in error, please notify the original sender immediately by telephone or by return e-mail and delete this message along with any attachments from your computer.  Thank you.



## IN THE CIRCUIT COURT OF THE 11ᵀᴴ JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | | |
|---|---|---|
| **MARC STOLOWITZ** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO.**   **2021-026329-CA-01** |
| | ) | **SECTION:**   **CA-09** |
| **v.** | ) | |
| | ) | |
| **NUANCE COMMUNICATIONS, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this lawsuit on defendant:

         **Nuance Communications, Inc.**
         **C/O Registered Agent**
         **CT Corporation System**
         **1200 South Pine Island Road**
         **Plantation, FL 33324**

      Each defendant is required to serve written defenses to the complaint or petition on Andrew Grosso, Esq. ANDREW GROSSO & ASSOCIATES, whose address is 1101 Thirtieth Street NW, Suite 500 Washington, D.C. 20007 (Agrosso@acm.org), plaintiff's attorney within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

Dated on January _____

                             **CLERK OF THE CIRCUIT COURT**

          (SEAL)

                             **HARVEY RUVIN**
                             Clerk of the Circuit Court
                             73 W. Flagler St.
                             Miami, FL 33130

                             By: _____
                                 As Deputy Clerk

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.**

**Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

**Plaintiff's Attorney:**
Andrew Grosso, Esq. (Fla. Bar No. 0998583)
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street NW, Suite 500
Washington, D.C.  20007
Telephone: (202) 298-6500
Email: Agrosso@acm.org


Stephen J. Bagge, Esq. (Fla. Bar No. 97788)
STEPHEN J. BAGGE, P.A.
3902 Henderson Blvd. STE 208-30
Tampa, Florida 33629
Telephone: (813) 250-0511
Facsimile: (813) 250-0511
Email: sbagge@baggelaw.com

Case 1:22-cv-20234-RNS   Document 1-1   Entered on FLSD Docket 01/20/2022   Page 85 of 93

# IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

**MARC STOLOWITZ**  )
  )
  )
  )
  **Plaintiff,**  )    CASE NO.  **2021-026329-CA-01**
  )    SECTION:  **CA-09**
**v.**  )
  )
**NUANCE COMMUNICATIONS, INC.,**  )
  )
  )
  )
  **Defendant.**  )
  **SUMMONS**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this lawsuit on defendant:

> **Nuance Communications, Inc.**
> **C/O Registered Agent**
> **CT Corporation System**
> **1200 South Pine Island Road**
> **Plantation, FL 33324**

Each defendant is required to serve written defenses to the complaint or petition on Andrew Grosso, Esq.  ANDREW GROSSO & ASSOCIATES, whose address is 1101 Thirtieth Street NW, Suite 500 Washington, D.C.  20007 (Agrosso@acm.org), plaintiff's attorney within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

Dated on January ____12/28/2021____

(SEAL)

**CLERK OF THE CIRCUIT COURT**

**HARVEY RUVIN**
Clerk of the Circuit Court
73 W. Flagler St.
Miami, FL 33130

By: _____
As Deputy Clerk

21940

1

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.**

**Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

**Plaintiff's Attorney:**
Andrew Grosso, Esq. (Fla. Bar No. 0998583)
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street NW, Suite 500
Washington, D.C.  20007
Telephone: (202) 298-6500
Email: Agrosso@acm.org


Stephen J. Bagge, Esq. (Fla. Bar No. 97788)
STEPHEN J. BAGGE, P.A.
3902 Henderson Blvd. STE 208-30
Tampa, Florida 33629
Telephone: (813) 250-0511
Facsimile: (813) 250-0511
Email: sbagge@baggelaw.com

## IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | | |
|---|---|---|
| MARC STOLOWITZ | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | CASE NO.  **2021-026329-CA-01** |
| | ) | SECTION:  **CA-09** |
| v. | ) | |
| | ) | |
| NUANCE COMMUNICATIONS, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

### SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this lawsuit on defendant:

> **Nuance Communications, Inc.**
> **C/O Registered Agent**
> **CT Corporation System**
> **1200 South Pine Island Road**
> **Plantation, FL 33324**

Each defendant is required to serve written defenses to the complaint or petition on Andrew Grosso, Esq.  ANDREW GROSSO & ASSOCIATES, whose address is 1101 Thirtieth Street NW, Suite 500 Washington, D.C.  20007 (Agrosso@acm.org), plaintiff's attorney within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

Dated on January ____12/28/2021____

(SEAL)

**CLERK OF THE CIRCUIT COURT**

**HARVEY RUVIN**
Clerk of the Circuit Court
73 W. Flagler St.
Miami, FL 33130

By: _____
As Deputy Clerk

1

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.**

**Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Plaintiff's Attorney:
Andrew Grosso, Esq. (Fla. Bar No. 0998583)
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street NW, Suite 500
Washington, D.C.  20007
Telephone: (202) 298-6500
Email: Agrosso@acm.org


Stephen J. Bagge, Esq. (Fla. Bar No. 97788)
STEPHEN J. BAGGE, P.A.
3902 Henderson Blvd. STE 208-30
Tampa, Florida 33629
Telephone: (813) 250-0511
Facsimile: (813) 250-0511
Email: sbagge@baggelaw.com

## IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

| | | |
|---|---|---|
| MARC STOLOWITZ | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | CASE NO.  2021-026329-CA-01 |
| | ) | SECTION:  CA-09 |
| v. | ) | |
| | ) | |
| NUANCE COMMUNICATIONS, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**SUMMONS**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the Complaint in this lawsuit on defendant:

> **Nuance Communications, Inc.**
> **C/O Registered Agent**
> **CT Corporation System**
> **1200 South Pine Island Road**
> **Plantation, FL 33324**

Each defendant is required to serve written defenses to the complaint or petition on Andrew Grosso, Esq.  ANDREW GROSSO & ASSOCIATES, whose address is 1101 Thirtieth Street NW, Suite 500 Washington, D.C.  20007 (Agrosso@acm.org), plaintiff's attorney within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

Dated on January _____

(SEAL)

**CLERK OF THE CIRCUIT COURT**

**HARVEY RUVIN**
Clerk of the Circuit Court
73 W. Flagler St.
Miami, FL 33130

By: _____
       As Deputy Clerk

1

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.**

**Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

**Plaintiff's Attorney:**
Andrew Grosso, Esq. (Fla. Bar No. 0998583)
ANDREW GROSSO & ASSOCIATES
1101 Thirtieth Street NW, Suite 500
Washington, D.C.  20007
Telephone: (202) 298-6500
Email: Agrosso@acm.org


Stephen J. Bagge, Esq. (Fla. Bar No. 97788)
STEPHEN J. BAGGE, P.A.
3902 Henderson Blvd. STE 208-30
Tampa, Florida 33629
Telephone: (813) 250-0511
Facsimile: (813) 250-0511
Email: sbagge@baggelaw.com



# MIAMI-DADE COUNTY CLERK OF THE COURTS
## HARVEY RUVIN

Contact Us    My Account    

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◀◀ BACK

### MARC STOLOWITZ VS NUANCE COMMUNICATIONS INC.

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2021-026329-CA-01 | **Filing Date:** | 12/03/2021 |
| **State Case Number:** | 132021CA026329000001 | **Judicial Section:** | CA09 |
| **Consolidated Case No.:** | N/A | **Case Type:** | Other Civil Complaint |
| **Case Status:** | OPEN | | |

## 👥 Parties
Total Of Parties: 2  ▬

| Party Description | Party Name | Attorney Information | Other Attorney(S) |
|---|---|---|---|
| Plaintiff | Stolowitz, Marc | **B#:  (Bar Number)**97788<br>**N:  (Attorney Name)**Bagge, Stephen J | |
| Defendant | Nuance Communications Inc. | | |

## 🔧 Hearing Details
Total Of Hearings: 0  ▬

| Hearing Date | Hearing Time | Hearing Code | Description | Hearing Location |
|---|---|---|---|---|

## 🔊 Dockets
Total Of Dockets: 14  ▬

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 12/28/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 13 | 12/28/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 11.**<br>Parties: Nuance Communications Inc. |
| | 12 | 12/28/2021 | | Receipt: | Event | RECEIPT#:2910089 AMT PAID:$10.00 NAME:BAGGE, STEPHEN J 3902 HENDERSON BLVD SUITE 208-30 TAMPA FL 33629 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:EFILINGS TENDER AMT:$10.00 RECEIPT DATE:12/28/2021 REGISTER#:291 CASHIER:EFILINGUSER |
| 📄 | 11 | 12/23/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 10 | 12/07/2021 | | Receipt: | Event | RECEIPT#:3240219 AMT PAID:$401.00 NAME:BAGGE, STEPHEN J 3902 HENDERSON BLVD SUITE 208-30 TAMPA FL 33629 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 TENDER TYPE:EFILINGS TENDER AMT:$401.00 RECEIPT DATE:12/07/2021 REGISTER#:324 CASHIER:EFILINGUSER |
| 📄 | 9 | 12/03/2021 | | Exhibit List | Event | |
| 📄 | 8 | 12/03/2021 | | Exhibit List | Event | |
| 📄 | 7 | 12/03/2021 | | Exhibit List | Event | |
| 📄 | 6 | 12/03/2021 | | Exhibit List | Event | |
| 📄 | 5 | 12/03/2021 | | Exhibit List | Event | |
| 📄 | 4 | 12/03/2021 | | Exhibit List | Event | |
| 📄 | 3 | 12/03/2021 | | Exhibit List | Event | |
| 📄 | 2 | 12/03/2021 | | Complaint | Event | |
| 📄 | 1 | 12/03/2021 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer.

## General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



## HARVEY RUVIN

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2022 Clerk of the Courts. All rights reserved.

