United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Marc Stolowitz, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-20234-Civ-Scola |
| | ) |
| Nuance Communications, Inc., | ) |
| Defendant. | ) |

**Order Granting Motion to Dismiss**

    Plaintiff Marc Stolowitz complains his former employer, Defendant Nuance Communications, Inc., provided false and fraudulent information to the Federal Bureau of Investigation and the United States Attorney's Office for the Southern District of Florida in retaliation against him for identifying and planning to report a cyber-security weakness in Nuance's computer system. (Compl., ECF No. 1-1, 4.) Stolowitz initially filed his complaint in state court, in December 2021, seeking relief under various Florida tort and statutory theories: malicious prosecution; defamation; fraud; retaliation under the Florida Whistleblower Act; and invasion of privacy. Nuance thereafter removed this case, to this Court, based on the Court's diversity jurisdiction. Nuance now seeks dismissal of Stolowitz's claims, submitting, primarily, that Stolowitz has failed to state a claim under any of the theories set forth in his complaint. (Def.'s Mot. to Dismiss, ECF No. 5.) Stolowitz opposes the motion (Pl.'s Resp., ECF No. 8). Nuance has timely replied (Def.'s Reply, ECF No. 14) and the motion is ripe for determination. After review, the Court agrees with Nuance and **grants** its motion (**ECF No. 5**), thus **dismissing** Stolowitz's case.

    **1. Background**[*]

    Stolowitz worked for Nuance, a computer software technology company, from 2011 to 2016, as a software engineer. (Compl. ¶¶ 4, 7.) Stolowitz was terminated in October 2016 as part of a reduction in force. (*Id.* ¶ 25.) Both during and after his employment, Stolowitz had concerns about the way Nuance handled the protected medical information of the patients whose records Nuance maintained for various health care providers. (*Id.* at 1, ¶ 28.) Over a year after his termination, in November 2017, Stolowitz used what he describes as "publicly available" uniform resource locators, or "urls," to access the

---

[*] The Court accepts the complaint's *factual* allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

transcribed medical records of some 45,000 patients from 137 medical facilities, all of which were Nuance's clients. (*Id.* ¶¶ 8, 29–30, 37.) Stolowitz downloaded the records onto a USB drive, organizing the information into spreadsheets, noting the medical facility from which each record had issued; the record's assigned file number; the location on Stolowitz's storage media where the information was maintained; and the publicly accessible url, or webpage address, from Nuance's system, where the medical record was located. (*Id.* ¶ 34.) Stolowitz never disclosed the records, but says he simply kept the information, secured, waiting to see if Nuance would ever resolve the url-accessibility issue. (*Id.* ¶ 31.)

Nuance learned of Stolowitz's access and downloads from its network (*id.* ¶ 40) and contacted the FBI and USAO, beginning in December 2017 (*id.* ¶ 42). Nuance provided the FBI with Stolowitz's personnel file and the FBI and the USAO opened a criminal investigation, targeting Stolowitz for violations of the Computer Fraud and Abuse Act. (*Id.* ¶¶ 43–44.) As part of that investigation, the FBI and USAO obtained a warrant from this Court, authorizing the FBI to search Stolowitz's home and to seize his personal computer equipment and electronic storage media. (*Id.* ¶ 45.) The FBI executed the warrant on January 25, 2018, and seized the identified items. (*Id.* ¶ 46.) Ultimately, everything seized was eventually returned to Stolowitz and no charges were ever filed against him. (*Id.* ¶ 47.)

In May 2018, Nuance filed its required quarterly report with the Securities and Exchange Commission, recounting the incident as follows:

> [I]n December 2017, an unauthorized third party illegally accessed certain reports hosted on a Nuance transcription platform. This incident was limited in scope to records of approximately 45,000 individuals and was isolated to a single transcription platform that was promptly shutdown. Customers using that platform were notified of the incident and were migrated to our eScription transcription platforms. We also notified law enforcement authorities and have cooperated in their investigation into the matter. . . . This incident did not have a material effect on our financial results for the six months ended March 31, 2018 and is not expected to have a material effect on our financial results for future periods. Future cybersecurity or data privacy incidents could have a material adverse effect on our results of operations. See "Risk Factors - Cybersecurity and data privacy incidents or breaches may damage client relations and inhibit our growth."

(*Id.* ¶ 52.) Further, also in May 2018, an article about the incident appeared in *Data Breach Today*, an online news service reporting on cybersecurity

issues. In the piece, the San Francisco Department of Public Health revealed that an "investigation determined that a former Nuance employee breached Nuance's servers and accessed the personal information of thousands of individuals." (*Id.* ¶ 53.) The director of the San Francisco Health Network is quoted in the article, apologizing for the breach and issuing assurances: "All of our vendors are required to attest to the protection of patient privacy, as part of their contract, and we continue to audit and improve upon that process." (*Id.*)

At the heart of Stolowitz's complaint is his contention that Nuance attempted to cover up its own security flaws and failures to safeguard the protected health information of its clients' patients by casting blame on Stolowitz, falsely accusing him of criminal conduct. The damages Stolowitz seeks stem from, among other things, the legal costs he says he incurred in having to defend himself from Nuance's criminal allegations and the resulting search warrant; the costs associated with the seizure of his personal computer devices and data; reputational damages; pain and suffering, including humiliation; and punitive damages.

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### 3. Discussion

Stolowitz's complaint is comprised of five counts: (A) malicious prosecution; (B) defamation; (C) fraud; (D) retaliation; and (E) common law invasion of privacy. For the reasons set forth below, the Court finds Stolowitz fails to a state a claim upon which relief can be granted on any of these bases.

### A. Stolowitz fails to state a claim for malicious prosecution.

Nuance argues that Stolowitz fails to state a claim for malicious prosecution because (1) there was never any judicial proceeding initiated against him and (2) there was a finding of probable cause by the magistrate judge. (Def.'s Mot. at 6.) In response, Stolowitz maintains that (1) the issuance and execution of the search warrant, alone, amounts to a judicial proceeding and (2) the finding of probable cause was based on erroneous information provided to the FBI by Nuance. (Pl.'s Resp. at 5–8.) The Court agrees with Nuance that, under Florida law, the issuance and execution of a search warrant, without further judicial action, does not qualify as a "judicial proceeding" for the purposes of a claim of malicious prosecution. Because the Court finds Stolowitz's claim for malicious prosecution due for dismissal on this basis, it declines to address Nuance's second argument.

One of the elements a plaintiff must establish, in Florida, to succeed on a claim for malicious prosecution is that "an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). Under Florida law, in order to satisfy this element, a plaintiff must allege that he was either arrested or actually prosecuted. *See Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 8 (Fla. 2016) (holding that the plaintiff "lacked a cause of action under a malicious prosecution theory because he was never arrested, nor was he prosecuted"). Stolowitz does not allege either. Instead, he points to cases that he says indicate that the issuance and execution of a search warrant amount to a judicial proceeding. The Court is not persuaded.

In one of those cases, in noting that a prosecutor's "appearance in court in support of an application for a search warrant" is an activity which is considered "intimately associated with the judicial phase of the criminal process," the court was assessing the point at which absolute immunity would attach to shield a prosecutor from litigation. *Qadri v. Rivera-Mercado*, 303 So. 3d 250, 256 (Fla. 5th DCA 2020). But the recognition that a prosecutor is afforded absolute immunity for performing her role as an advocate—for example by procuring a

search warrant—does not mean that the issuance or execution of a search warrant amounts to a judicial proceeding in the context of a malicious-prosecution claim. Nor does Stolowitz's reliance on century-old cases from Oregon, Georgia, and Arkansas salvage his claim. (Pl.'s Resp. at 5 (citing *Nally v. Richmond*, 105 Or. 462 (1922); *Page v. Citizens' Banking Co.*, 111 Ga. 73 (1900); *Hardin v. Hight*, 106 Ark. 190 (1913)).) The Court finds those cases unpersuasive where the Florida Supreme Court has drawn a clear distinction between a claim for malicious prosecution, on the one hand—requiring either an arrest or an actual prosecution—and a separate cause of action for "negligent reporting of criminal conduct," on the other—which does not. *Valladares*, 197 So. 3d at 13. Here, Stolowitz, for whatever strategic reason, chose to go forward with a claim for malicious prosecution rather than negligent reporting. And, notably, he sticks to his guns in opposing the motion to dismiss, insisting he has succeeded in stating a claim for malicious prosecution. Consequently, the Court agrees with Nuance: Stolowitz was neither arrested nor prosecuted and therefore, under Florida law, he has failed to state a claim for malicious prosecution.

### B. Stolowitz's defamation claim is time barred.

Next, Nuance maintains that Stolowitz's defamation claim is time barred because he filed it beyond the applicable two-year statute of limitations. (Def.'s Mot. at 10–12.) In response, Stolowitz does not dispute that the limitations period has expired; instead, he maintains that the limitations period should be tolled because the affidavit supporting the search warrant, upon which he bases his claim, was sealed from his view by the Court until March 25, 2021. (Pl.'s Resp. at 8–9.) The Court finds Stolowitz's argument misplaced.

By its terms, Florida Statutes section 95.015 sets forth a list of nine statutory circumstances—none of which mentions equitable tolling—that can toll the running of the statute of limitations. Fla. Stat. § 95.015(1); *see also* § 95.015(2) ("A disability or other reason does not toll the running of any statute of limitations except those specified in this section, s. 95.091, the Florida Probate Code, or the Florida Guardianship Law."). In a notice of supplemental authority, Stolowitz highlights two of these circumstances in particular: (1) where the person to be sued uses "a false name that is unknown to the person entitled to sue so that process cannot be served on the person to be sued," § 95.015(1)(b); and (2) "[c]oncealment in the state of the person to be sued so that process cannot be served on him or her," § 95.051(c). Neither of these situations, however, applies: there are no allegations that Nuance ever used a false name or concealed itself in an attempt to avoid service.

The Court also finds Stolowitz's reliance on the doctrine of equitable tolling misplaced. Although he points to a Florida Supreme Court case where the

doctrine was applied, pointedly limited to the administrative context, he provides no basis upon which equitable tolling should be applied here. *See Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988) (applying equitable tolling in the administrative context). Without more, the Court is unable to conclude that the Florida Supreme Court would allow the application of the doctrine on these facts—especially where the plaintiff does not indicate what efforts he took to discover Nuance's reporting him to the FBI after he became aware of the existence of the search warrant. *See HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So. 2d 1094, 1099 (Fla. 2d DCA 2004) ("We are not persuaded that our supreme court would allow the doctrine [of equitable tolling] to be applied in civil action[s] such as the Plaintiffs'."); *Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 174 (Fla. 5th DCA 2016) ("The statute of limitations begins to run at the time of publication, not when the plaintiff discovers the alleged defamatory material."); *Aruanno v. Martin Cnty. Sheriff*, 343 F. App'x 535, 537 (11th Cir. 2009) (noting that "equitable tolling is an extraordinary remedy which should be extended only sparingly") (cleaned up); *cf. Lopez v. Geico Cas. Co.*, 968 F. Supp. 2d 1202, 1206 (S.D. Fla. 2013) (Ryskamp, J.) ("Equitable tolling is unavailable outside of the administrative context.").

Without establishing a basis for tolling, then, Stolowitz's claim for defamation, filed in late 2021, based on Nuance's reporting to the FBI and the USAO in late 2017 or early 2018, is barred by the two-year statute of limitations for a defamation claim.

### C. Stolowitz's fraud claim fails because he has not alleged reliance.

As to Stolowitz's fraud claim, Nuance argues that Stolowitz has failed to allege two elements: (1) that Nuance ever made a fraudulent statement for the purpose of inducing Stolowitz's reliance; or (2) that Stolowitz ever acted on any fraudulent statement by Nuance. (Def.'s Mot. at 14.) Stolowitz does not disagree that he has not alleged his own reliance on Nuance's allegedly false statements. (Pl.'s Resp. at 10–13.)  Instead, he contends such allegations are not actually necessary—according to Stolowitz, alleging an injury resulting from the false statement is alone sufficient. (*Id.*) Stolowitz's argument is unavailing.

"The essential elements of common law fraud . . . are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 336 (Bankr. S.D. Fla. 2013) (Hyman, Bankr. C.J.) (citing *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010)). Even Stolowitz does not dispute that he has not alleged that he himself relied on Nuance's allegedly false statements or that

Nuance intended for him to so rely, as required by the third and fourth elements. Instead, Stolowitz's quarrel is that, so long as he has alleged that Nuance intended him to be the victim of Nuance's false statements, he need not allege his own reliance on those false statements. Stolowitz looks to a number of sources to support his theory, none of which connects.

For example, Stolowitz cites to a United States Supreme Court opinion for the proposition that one can be injured by a fraudulent misrepresentation even though the one claiming injury did not rely on the misrepresentation herself. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 656 (2008) ("[T]here is no general common-law principle holding that a fraudulent misrepresentation can cause legal injury only to those who rely on it."). Stolowitz's reliance on this case misses the mark. The *Bridge* opinion specifically points out that the predicate act under consideration there was "not common-law fraud," like here, "but mail fraud." *Id.* at 655 (pointedly noting that "[r]eliance is not a general limitation on civil recovery in tort; it is a specialized condition that happens to have grown up with *common law fraud*") (cleaned up) (emphasis added). Accordingly, *Bridge's* recognition that "first-party reliance" is not necessary to establish proximate cause in a Racketeer Influenced and Corrupt Organizations Act case, has no bearing on whether Stolowitz must satisfy the reliance elements of his Florida common-law claim for fraud. Indeed, the *Bridge* case pointedly differentiated between the elements necessary to set forth a RICO claim—which does not require first-party reliance—and common-law fraud—which does. *Id.* at 656.

Stolowitz also points to the prima facie tort doctrine to support his fraud claim. According to Stolowitz, he should be able to recover for Nuance's alleged malfeasance, regardless of whether Nuance's false statements were directed towards Stolowitz or another party. So long as he suffered damages because of the false statements, reasons Stolowitz, his claims should be actionable. But even if the Court were inclined to construe the fraud claim as a claim under the prima facie tort doctrine, Stolowitz has, in any event, failed to establish the doctrine's applicability here.

As Stolowitz explains, the prima facie tort doctrine is a principle that allows courts to relax pleading requirements where a plaintiff has been wronged but cannot meet the technical requirements of any particular category of tort liability. (Pl.'s Resp. at 11 (citing the Restatement (Second) of Torts § 870).) Notably missing from Stolowitz's presentation, however, is any indication that Florida has ever adopted this doctrine into its common law. *See Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1213 (M.D. Fla. 2005) (dismissing claim under the prima facie tort doctrine, with prejudice, and noting that "Florida does not recognize this cause of action"); *Zombori v. Digital Equip. Corp.*, 878 F. Supp. 207, 208 (N.D. Fla. 1995), *aff'd,* 103 F.3d 147 (11th Cir.

1996) ("Florida has never adopted the prima facie tort theory into its common law."). Without more, the Court will not fashion a Florida cause of action where none has been shown to previously exist. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1542 (11th Cir. 1988) ("Generally, states may decide what is or is not tortious within their boundaries.")

Furthermore, simply subtracting the elements requiring first-party reliance from a fraud claim, as Stolowitz suggests, essentially amounts to nothing more than a defamation claim: (1) a false statement of fact; (2) known to be false at the time it is made; (3) communicated to a third party; and (4) resulting in damage to the plaintiff. The prima facie tort doctrine, even if it was an available cause of action under Florida law, serves only to fill a gap to address an injury for which existing tort law does not provide. That purpose would not be fulfilled, here, when applying the prima facie tort doctrine would simply duplicate a claim for defamation.

Because the Court finds Stolowitz's fraud claim fails for the reasons set forth above, it declines to address Nuance's Rule 9(b) particularity arguments.

### D. Stolowitz fails to establish a prima facie case of retaliation.

Stolowitz maintains he has sufficiently alleged a retaliation claim under the Florida Whistleblower Act because (1) he collected the information from Nuance's servers "for the purpose of providing that information to HSS"; (2) Nuance then reported the activity to the FBI and the USAO to initiate a criminal investigation against him; and (3) Nuance reported him to prevent him from divulging the security breach. (Pl.'s Resp. at 16.) While the Court agrees with Stolowitz that his FWA claim is not foreclosed just because he was a former, rather than current, employee at the time of both the protected activity and Nuance's adverse action against him, it disagrees that he has set forth facts showing that he engaged in statutorily protected expression or that there was a causal link between the alleged adverse employment action and that purported protected expression.

To establish a prima facie case under the FWA, a plaintiff must allege facts showing "(1) that there was a statutorily protected expression; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action." *Pinder v. Bahamasair Holdings Ltd., Inc.*, 661 F. Supp. 2d 1348, 1351 (S.D. Fla. 2009) (King, J.). As to the first element, Stolowitz has not established his participation in a statutorily protected expression. Instead, he alleges only that he accessed and downloaded the patient information "to provide proof of the issue, and the scope of the issue, to [the U.S. Department of Health & Human Services]"—not that he actually had contacted HHS. (Compl. ¶ 86; *see also* ¶ 30 (alleging that

Stolowitz accessed the patient information "in *preparation* for notifying [HHS]") (emphasis added); ¶ 33 (alleging Stolowitz "prepared spreadsheets . . . to hand over to HHS").) Indeed, in his response brief, Stolowitz acknowledges he was only an aspiring whistleblower, hoping to "eventually" provide the downloaded patient information to HHS. (Pl.'s Resp. at 3.) He also alleges in only conclusory terms that he had "threatened to disclose, and to disclose under oath when appropriate, the activity, policy and practice of Nuance that was in violation of the Privacy Rule." (Compl. ¶ 87.) But this allegation merely parrots the language found in the statute, protecting an employee who has "[d]isclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(1). Without more, Stolowitz's perfunctory claims fall short of setting forth actual facts supporting his claim. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action").

Furthermore, even if Stolowitz had established his participation in a statutorily protected expression, he fails to allege any facts demonstrating a causal link between Nuance's purported adverse employment action (contacting the FBI and the USAO) and the expression. In order to satisfy the "causal link" prong, in a case involving a corporate defendant, as here, a "plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997). Key here, Stolowitz supplies no facts showing that he ever communicated to Nuance his purported intent to initiate a regulatory investigation of Nuance's alleged cyber-security failings. Without showing that anyone at Nuance was actually aware of his intent, Stolowitz cannot then establish that someone at Nuance was prompted to contact the FBI and USAO because of any protected expression. For this additional reason, then, Stolowitz's FWA claim fails.

### E. Stolowitz's claim for invasion of privacy is deficient.

Stolowitz labeled his fifth count as sounding in "Common Law Invasion of Privacy." (Compl. at 25.) In Florida, four types of wrongful conduct are identified as falling under the umbrella of an invasion of privacy action:

> (1) appropriation—the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion—physically or electronically intruding into one's private quarters; (3) public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable; and

> (4) false light in the public eye—publication of facts which place a person in a false light even though the facts themselves may not be defamatory.

*Agency for Health Care Admin. v. Associated Indus. of Florida, Inc.*, 678 So. 2d 1239, 1252 n. 20 (Fla. 1996). As an initial matter, Nuance complains Stolowitz's claim for, in general, common-law invasion of privacy is unduly vague, leaving Nuance without a way of determining which specific privacy-related cause of action Stolowitz is actually pursuing. (Def.'s Mot. at 18.) In response, Stolowitz clarifies he seeks redress under the categories of intrusion and false light. (Pl.'s Resp. at 17.) Taking Stolowitz at his word, the Court evaluates his allegations within the framework of those two types of claims.

As to the first basis—intrusion—Stolowitz has failed to state a claim. Under Florida law, the tort of invasion of privacy by intrusion has three elements: (1) there must be a private quarter; (2) there must be some physical or electronic intrusion into that private quarter; and (3) the intrusion must be highly offensive to a reasonable person. *Rebalko v. City of Coral Springs*, 19-60569-CIV, 2020 WL 6446042, at * 29 (S.D. Fla. Nov. 3, 2020) (Altman, J.). Because the Court finds Stolowitz has not alleged facts satisfying the third element, his claim fails. As to this third element, a plaintiff "must plausibly allege that the intrusion is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* at * 30 (cleaned up). To do this, Stolowitz must present facts that "demonstrate as objectively as is possible, that the alleged misconduct is atrocious, and utterly intolerable in a civilized community." *Id.* (cleaned up). Stolowitz does not even come close to meeting this standard. Instead, he sets forth, perfunctorily, only that a search warrant was executed on his residence; that his neighbors observed the "physical invasion of [his] home"; and that the "invasion" was publicized by the press. (Compl. ¶ 93–4.) He summarily maintains that, as a result of this invasion, Nuance harmed him. This does not even come close to meeting the "onerous standard" required to show that the intrusion was "highly offensive."

As to the second basis—false light—Stolowitz fails to provide any support showing that this is a viable cause of action in Florida. And, indeed, it appears it has been pointedly rejected by the Florida Supreme Court since 2008. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1114 (Fla. 2008) ("[W]e decline to recognize a cause of action for false light invasion of privacy."); *see also Dowbenko v. Google Inc.*, 582 Fed. Appx. 801, 804 (11th Cir. 2014) (holding that a plaintiff's "false light invasion of privacy claim fails because Florida law does not recognize such a cause of action").

In sum, then, Stolowitz fails to state a claim for an invasion of privacy under Florida law.

### 4. Conclusion

For the foregoing reasons, the Court **grants** Nuance's motion (**ECF No. 5**), thus **dismissing** all five counts of Stolowitz's complaint, **with prejudice**, based on his failure to state a claim. Additionally, the Court dismisses Stolowitz's complaint **without leave to amend**, denying his cursory request for leave to amend, inserted as an afterthought, in the last sentence of his twenty-page response to Nuance's motion (Pl.'s Resp. at 20): the request is both procedurally defective and lacking in substantive support. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (cleaned up).

Finally, the Clerk is directed to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered** in Miami, Florida, on June 27, 2022.

_____
Robert N. Scola, Jr.
United States District Judge